# CASES

## IN THE

# SUPREME COURT OF ILLINOIS.

## SOUTHERN GRAND DIVISION.

### JUNE TERM, 1877.

## JEDIAH F. ALEXANDER

### *v.*

## SAMUEL COLCORD.

1. INJUNCTION — *damages on dissolution—solicitor's fee.* On the assessment of damages, on dissolution of an injunction, evidence of the payment of an attorney's fee, without showing the attorney rendered services necessary to the dissolution of the injunction, is not proper.

2. Where a party, enjoined in respect to the use of land, not only answers the bill, but files a cross-bill seeking affirmative relief and claiming title, and a decree is finally entered giving him the relief sought, and dismissing the original bill and dissolving the injunction, evidence heard on the assessment of damages as to his attorneys' fees should discriminate between services rendered in the case generally and those strictly necessary to procure a dissolution of the injunction.

3. SAME—*damages on dissolution—depriving party of use of land.* Where a party is deprived from exercising acts of ownership over land, by an injunction wrongfully sued out, he will be entitled to such damages as are the necessary and proximate result of that deprivation. In determining their extent, the court proceeds upon equitable principles, and is not governed

by arbitrary or technical rules. If the party suing out the writ is sought to be charged with the value of the land for pasturage, and he has fenced the same for that purpose, he should be allowed for the improvements he has put upon the land.

4. If the land was uninclosed at the time of the service of the injunction, and was only fit for pasture, and the defendant was not intending to use it for pasturage, or was not properly prepared to do so, he can claim no damages in respect to the use of the land for pasture. If intending to prepare the land for pasturing, by inclosing the same, and he was stayed by the injunction, his damages would be the use of the pasture, less the expense of preparing it for use. If he had procured materials to fence the land, and was prevented, any loss sustained in that respect, after using due care to avoid the same, would be an element of damages recoverable; but the burden of proof lies on the defendant to show that he was intending and prepared to inclose the land for use by a given time, in order to charge the other party.

5. Where the defendant is prevented from exercising any acts of ownership over his timber land, by injunction, so that he is unable to protect and care for the same, and the complainant takes off timber and wood, and removes sand, pending the injunction, on its dissolution the latter will be justly liable in damages for the value of the wood, timber and sand in the condition they were before conversion. If the sand, to be of any value, had to be inclosed and guarded by a watch, he should be charged with the value of the sand taken, less these necessary expenses.

6. ATTORNEY'S FEE—*its reasonableness.* Where the only serious question in a chancery suit was as to the sufficiency of the description in a deed, and whether extrinsic evidence was competent to identify and establish the calls in the deed, and there was no necessity for the examination of many witnesses, and the land involved in litigation was only 46½ acres, and not exceeding in value $50 per acre, and perhaps only worth $30 per acre, it was *held,* that estimates of witnesses, on the assessment of damages on dissolving an injunction, fixing the attorney's fees at $750, $1000, and one at $2000, were extravagant and beyond all reason.

APPEAL from the Circuit Court of Bond county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Appellant, in April, 1868, filed his bill in equity, against appellee, in the court below, alleging that he was lawfully possessed, as owner, of a certain tract of 46½ acres of land, in the vicinity of Greenville, in Bond county; that appellee had been trespassing thereon, and was threatening further trespasses, by cutting and removing timber, wood, etc., from the

land, and that he was insolvent. The prayer of the bill was, among other things, for a temporary injunction enjoining appellee from committing further trespasses on the land by cutting and removing timber, wood, etc., and from intruding upon the land, or in any manner interrupting appellant in the enjoyment of the peaceable possession of the land.

A temporary injunction was issued, in conformity with the prayer of the bill. The cause was continued until the April term, 1869, of the court, when appellee answered the bill, denying the trespasses charged against him, and justifying his acts as owner of the land, and the cause was then continued until the September term, 1869, of the court. At that term, appellee filed his cross-bill, setting up title to the land in himself, and alleging that appellant's pretended title was obtained with full knowledge of his prior title, and that it was void; and, also, that appellant had committed trespasses upon the land since the issuing of the temporary injunction in his behalf. The prayer was, that appellant be enjoined from trespassing upon or exercising acts of ownership over the land, and that his title be decreed void, etc. The cause was then continued until the May term, 1870, of the court, at which term appellant answered the cross-bill, denying appellee's title and asserting his own title to the land.

The cause, thereafter, was continued from term to term, until the September term, 1871, when, by agreement, it was continued to be heard, and was heard, in vacation after that term, and decree was entered as of that term. The decree dismissed appellee's cross-bill and granted the relief prayed in appellant's bill. An appeal was prosecuted to this court by appellee, and the record was brought here, and a hearing thereon had, at the June term, 1873, of this court. This court reversed the decree of the court below, and remanded the cause with directions to that court to dismiss appellant's bill and grant the prayer of appellee's cross-bill. See 67 Ill. 581.

At the September term, 1874, of the court below, the mandate of this court was carried out. Thereupon, appellee filed suggestions, in writing, of the damages sustained by reason

of the injunction, and the hearing thereof was continued until the next term of the court. At the April term, 1875, of the court, appellee filed his amended suggestions, in writing, of the damages sustained by reason of the injunction, as follows:

"By loss of the use of land in complainant's bill
    described, say 46½ acres, for six and one-half
    years, from April, 1868, to September, 1874,
    seven seasons, at $300 ..................... $2,100 00
By cutting and carrying trees, loss of wood, etc.   250 00
Amount of cash, time and labor expended in
    taking testimony, finding witnesses, etc.....   250 00
To cost of sand sold and carried away........   300 00
To amount paid for printing briefs and record..   84 37
To amount paid attorneys and counsel fees....  1,000 00

    Total............................... $4,034 37 "

Evidence was heard, and the court thereupon decreed that appellant pay to appellee, on account of such damages, $2500. The present appeal is prosecuted to reverse that decree.

Mr. J. M. HAMILL, and Mr. S. A. PHELPS, for the appellant.

Mr. GEORGE P. STRONG, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

We are of opinion the damages decreed to be paid by reason of the injunction are excessive.

It is impossible to determine, from the evidence preserved, the precise basis of the computation made by the court; but evidence respecting what must have been the principal items in the computation was, evidently, admitted under a misapprehension of the correct rule applicable in inquiries of this character.

Evidence was received of $25 paid to Messrs. Palmer and Hay, attorneys at law; but, instead of showing that they rendered services necessary to the dissolution of the injunction,

it shows that they did nothing whatever in that direction. The payment seems to have been for advice given, not only before the bill for injunction was filed, but, probably, before appellant had acquired the title under which he made claim to the land.

Appellee testifies that he paid the firm of Ledergerber, Russell & Colcord, attorneys at law, $200, by crediting the note of one of the firm (Colcord) who was appellee's son, with that amount; but it appears that all that this firm did in the case was, to prepare and file appellee's answer. This was short, and required no unusual amount of care or legal skill in its preparation. No one pretends to say it was reasonably worth $200 to prepare and file it, and, from our knowledge of the record, we think appellant's evidence that $50 would have been a reasonable fee for that service is quite liberal.

Strong testifies that he was paid, in money and property, what he regarded as equivalent to $1000, for his services in the case, but how much of this was money, he does not state. Appellee, however, says he paid Strong by deeding him one-fourth of the land. Strong, also, says he considers a reasonable fee for his services, considering the land was worth from $5000 to $8000, would be from $750 to $1000, and in this he is corroborated by T. G. C. Davis. J. P. Colcord, son of appellee, an attorney at law, practicing in St. Louis, Mo., thinks $2000 would have been a reasonable fee.

That these estimates are extravagant and beyond all reason, is clear, by reference to the character of the controversy, as disclosed by the record, and the value of the property in litigation. Appellee's deed to the property was prior to that of appellant. Appellant claimed appellee's deed was ineffectual to convey title to him, solely by reason of the indefiniteness of the description of the property. The contest involved only the legal question, whether it was competent to resort to evidence extrinsic the deed to identify and establish the calls in the deed. There was no serious controversy in regard to the facts, and there was no necessity for the examination of many witnesses, nor were many witnesses examined. The quantity

of land in litigation was 46 ½ acres.   No witness, not even ap-
pellee, pretends that its value exceeded $50 per acre.   This
would make the total value $2325, hardly one-third the amount
assumed by Strong as the basis of his charge; but the clear
and decided preponderance of the evidence is, that the value ·
did not exceed $30 per acre, making the total value $1395, or
$605 less than J. P. Colcord thinks was a reasonable attorney's
fee for preparing and trying the case.

Two able and highly respectable attorneys of this court,
Messrs. David Gillespie and G. Van Hoorebeke, fix the attor-
ney's fee for preparing and trying the case only at $300 and
$350, respectively.

A serious objection to all the evidence in respect to attor-
neys' fees is, no discrimination is made between services ren-
dered in the case generally, and services which were strictly
necessary to procure a dissolution of the injunction.

The cross-bill was entirely unnecessary to the dissolution
of the injunction, and the expense of its preparation, and of
services rendered in taking evidence, and discussing questions
and preparing a decree upon the issues raised by it, are not
chargeable against appellant by reason of the issuing of the
injunction.   The same is, also, to be said of the costs of tran-
script of record, preparing abstracts, and printing.

Evidence was introduced showing that the land was well
adapted to pasturage, how many animals might be pastured
on it during a season, and what the value of the pasturage of
each animal would be for each month.

Evidence was introduced by appellant showing that the land
was not inclosed when the injunction was served; that appel-
lant, at considerable expense, inclosed it and otherwise perma-
nently improved it as pasture land.

It is argued by appellee that he is entitled to the value of
the pasture for six seasons, without regard to any deductions
to be made for improvements placed on the land by appellant.

'The injunction deprived appellee from exercising acts of
ownership over the land during the time it was in force, and
he is entitled to be reimbursed for such damages as are the

necessary and proximate result of that deprivation. In determining the extent of such damages, the court proceeds upon equitable principles, and is not governed by arbitrary or technical rules. Hence, the question naturally arises here, what has appellee lost that he would have had but for the service of the injunction?

Pasturage is of so perishable a nature that it is lost to the land owner either if the land be not inclosed, or guarded against encroachments from stock running at large, in some other way, or not used for the purpose of pasturage at the proper time. Therefore, if appellee was not intending to use the land for pasture, or was not properly prepared to do so, he has lost nothing that he would have had but for the injunction. In other words, the injunction has, in this respect, deprived him of nothing that, had it not been served, he would have enjoyed. If he was intending to use the land as pasture, but was not ready to do so, but was stayed in his preparation by the injunction, it is evident he has lost only the use of the pasture, less the expense he would have been put to in preparing it for use, because his enjoyment was impossible without that preparation. If he has been to expense in regard to materials for fencing, etc., to the extent that such expense was necessarily lost to him by the injunction, he would be entitled to compensation. He would not, however, be justified, in that view, in allowing the materials to be unnecessarily wasted, with the expectation of charging appellee with their value. He should use due care and diligence to avoid loss, and would only be entitled to charge appellant with what could not be thus avoided. If appellant, in the fencing, used materials belonging to appellee, he should be allowed only for his labor and for the cost of whatever materials did not belong to appellee. The evidence is, that appellee designed to use 40 acres of the land for pasturage. He had prepared some materials and made some contracts for the purpose of fencing. It does not, however, appear that the materials were lost to him, or what damage he sustained under this head. The injunction was issued on the 20th of April, 1868. It does not appear

that appellee's intentions were, that he would immediately inclose the 40 acres, or that he was prepared to do so. If he was not, then he did not lose the pasturage for that year. The burden was on him to show that he was intending and prepared to inclose the land in time to have had the use of the pasture that year, in order to charge appellant with its loss.

The evidence, as before observed, shows that fencing of considerable value was placed on the land by appellant, to render it fit for use as pasture, and this remains there, as appellant testifies, "as good as new." By this assessment, appellee seeks and is entitled to its past benefits, and it remains his property for the future. He must, then, be charged with its reasonable cost. Other improvements, it is claimed, were also made on the land by appellant,—such as clearing it up, etc.,— increasing its past and future capacity as pasture, and for these, he is, upon the same principle, entitled to reasonable compensation.

We do not regard the mode of arriving at the value of the pasturage, pursued on the hearing, as satisfactory, or entirely fair to appellant. If appellee had stock of his own, and was designing to use the land to its utmost capacity in their pasture, probably it would have been unobjectionable; but he made no proof that he owned stock in sufficient numbers which he was designing, and was prepared, to pasture on the land, from year to year. If he was expecting to hire the use of the land as pasture to others, it is manifest the proper mode would have been to have shown what demand there was, from year to year, at that place, for such pasturage, and what it could have been reasonably let for, as a whole.

If the demand for such pasturage was not constantly equal to or in excess of the supply, it would seem that, in letting out at so much per head, there must necessarily be many times when it would not be filled to its utmost capacity; and so, what the owner would have made in this way, and has lost by the injunction, must largely depend upon conjecture and uncertainty. If, however, the land was in general demand as pasture, there must have been some certain price at which it

could have been rented for each year, as a whole, which is susceptible of definite proof.

The evidence in regard to the timber, wood and sand taken from the land, is not seriously objectionable. The injunction deprived appellee of the right to protect the land, as owner, from invasion by others, or to seek redress on that account. The loss of timber, wood and sand taken away while it was pending, may, therefore, be properly attributed to the injunction. Appellant is chargeable with the value of these things, in the condition they were before conversion.

Appellant testified that the sand, to be of any value, had to be protected by inclosure, and guarded by a watch. If this was true, then he should only be charged with the value of the sand taken, less these necessary expenses.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*