## V. W. PANTON
### v.
## HANNAH S. COLLAR.

1. CREDITOR'S BILL—A DECREE AVOIDING CIRCUITY. OF ACTION.—Appellee obtained judgment against Mrs. M. and one Knox. Execution was issued and returned "no property found." Thereupon appellee filed a creditor's bill against Mrs. M., appellant and others. The evidence in the case was very conflicting but it was undisputed that in addition to a $1,200 note given by appellant to Mrs. M. and in addition to other sums that Mrs. M. owed appellant, or that he paid to or for her in payment for her interest in certain real estate, appellant entered into a written contract with Mrs. M. "to hold her harmless from the payment of the Knox note." The note above named was the foundation of appellee's judgment. *Held*, that the decree of the court below compelling appellant to specifically perform his contract by paying appellee's judgment, instead of a decree, entered against the note of appellant in Mrs. M.'s hands, was proper. It was with'n the jurisdiction of the court to do equity between the parties by releasing the one directly responsible and compelling the one ultimately responsible to pay. Such a course avoids circuity of action.

2. DECREE FOR ATTORNEY'S FEES, NOT SHOWN BY RECORD.—A decree for attorney's fees where the bill of exceptions or certificate of evidence fail entirely to show the value of any attorney's fees or that any were made necessary in the action, can not be sustained.

3. DAMAGES FOR SUING OUT INJUNCTION.—The Mitchell farm, having been converted into money, by the sale, the lien of appellee's judgment

would attach to it instead of the land and the lien would be carried to the certificate of purchase, the bid not having been paid. Such being the case, the remedy by injunction to stop the master from executing a deed until the matter could be settled, was proper. It would, therefore, be unjust to decree heavy damages against appellee for wrongfully suing out the injunction as she was only pursuing a lawful remedy and one within the power of the court to enforce, and which the court, no doubt, would have enforced, at least in part, but for the fact that it was apparent to the court that appellee's judgment could be made safe by a personal decree against appellant.

4. FRAUDULENT TRANSACTION, CAN NOT OBTAIN DAMAGES FOR LOSS OCCASIONED BY.—From the evidence it appears that appellant's object in procuring a foreclosure of the mortgage, was fraudulent. He is not, therefore, in a court of equity, entitled to claim damages for loss arising from a state of affairs which he by his fraudulent conduct contributed to bring upon himself.

ERROR to the Circuit Court of Kane county; the Hon. C. W. UPTON, Judge, presiding. Opinion filed February 9, 1883.

Mr. D. B. SHERWOOD and Mr. J. RANSTEAD, for plaintiff in error; that the answers of defendants responsive to the allegations of the supplemental bills, must be taken as true, unless disproved by evidence amounting to the testimony of two witnesses, cited Stouffer v. Machew, 16 Ill. 553; Cassell v. Ross, 33 Ill. 246; Marple v. Scott, 41 Ill. 50.

As to inadequacy of price justifying an inference of fraud: Bump on Fraud. Conveyances; McArtee v. Engart, 13 Ill. 242; Ulrich v. Muhlke, 61 Ill. 518; Osgood v. Franklin, 2 John. 22; Shinn v. Shinn, 91 Ill. 486.

As to jurisdiction: Bowen v. Parkhurst, 24 Ill. 257.

Before Mrs. M. could recover damages she would have to show that she was damaged: Israel v. Reynolds, 11 Ill. 222; Dent v. Davidson, 52 Ill. 109; Gage v. Lewis, 68 Ill. 609; Callinge v. Heywood, 9 Adol. & Ellis, 633; Aberdeen v. Blackman. 6 Hill, 324.

Defendant in error has no higher or greater rights under this contract of indemnity than Mrs. M.: Alexander v. Tams, 13 Ill. 225; Boute v. Cooper, 90 Ill. 440.

Messrs. BOTSFORD, BARRY & RUSSELL, for defendant in er-

ror; that by the statute, Mrs. M. was entitled to the rents in question, cited Clark v. Burnside, 15 Ill. 62; Trask v. Baxter, 48 Ill. 406.

The assessment of damages should rest on equitable grounds: Collins v. Sinclair, 51 Ill. 328.

The fees are not proportionate to the services rendered: Wilson v. Hecker, 85 Ill. 349; Collins v. Sinclair, 51 Ill. 328; Blair v. Reading, 99 Ill. 600.

The evidence on which the damages and attorney's fees are based is not preserved in the record, and the recitals in the decree do not satisfy the requirements: Steel v. Thatcher, 56 Ill. 257; I. & St. L. R. R. Co. v. Decker, 3 Bradwell, 137; Jevne v. Osgood, 57 Ill. 340; Alexander v. Colcord, 85 Ill. 323; Spring v. Collector of Olney, 78 Ill. 101.

LACEY, J. This was a creditor's bill by appellee against appellant to recover the amount of a judgment that she had recovered in the circuit court of that county against one Knox and Ann Mitchell for $757.65 and costs, October, 1878; executions had been issued, and returned no property found, Knox living in DeKalb and Mitchell in Kane county.

The bill and first, second and third supplemental bills show that one Wm. Panton, father of appellant, was the owner of the mill property, and Thomas Mitchell was the owner of the Mitchell farm. That Wm. Panton became indebted to Mitchell for the latter's giving his security for $7,000 and gave him a mortgage to secure that amount on his mill, and that Mitchell gave a mortgage on his farm to one Hull to secure Panton's debt for which he was security.

Mitchell dying and Panton being insolvent, Ann Mitchell and the heirs foreclosed the mortgage against Panton on the mill and obtained a certificate of purchase which was afterward transferred to appellant who obtained a master's deed under it. That at the time of the transfer of the certificate, Ann Mitchell had an interest in it for $1,600 and the shares of Mary A. Campbell and Nathan Mitchell besides her interest as widow in the estate of Thomas Mitchell, deceased; that she received only a small interest for the transfer, but that in

Panton v. Collar.

addition charges that appellant was to pay the judgment of appellee against Ann Mitchell.

That the Hull mortgage, the one Mitchell gave on his place, had been foreclosed by collusion between appellant and Hull, Hull to recover $7,595.96, and appellant $1,759.06. The action being procured by appellant. That the object was to close out the interest of Ann Mitchell and defeat complainant's judgment, which was a lien subsequent to the Hull mortgage on her interest. That the farm was sold to appellant for $12,-000 under the decree of foreclosure and a certificate of sale issued to him, and that in equity he held the same interest for whatever interest Ann Mitchell had in the same, subject to the satisfaction of complainant's judgment, and also that appellant having his own interest in the certificate, had not paid Hull anything on it. That J. W. Ranstead held the certificate and the time of redemption had expired. That appellee feared the certificate of purchase would be removed beyond the jurisdiction of the court unless restrained, so the whole amount would have to be redeemed. That the appellant be required to pay whatever sum in his hands belonged to Ann Mitchell to be paid to appellee, or that Ann Mitchell's interest be sold in satisfaction thereof. Appellee offered to pay Hull and tendered him $8,000 provided Ranstead would permit the certificate in the hands of the master to be sold for the benefit of all parties under the order of court. Writ of injunction was granted July 21, 1881, enjoining O. McClellan, Master in Chancery, from executing deed on the certificate to appellant or to Hull until the further order of the court. To the bill and supplemental bill appellant and Ann Mitchell filed answers.

Appellant in his answer shows that he was the owner of the premises, having purchased the interest of all the heirs of Thomas Mitchell, deceased, except his wife and Nathan Mitchell, to wit: William T. Mitchell, Henry Mitchell, and Mary Campbell and Martha Knox, and that he had purchased also the interest of Ann Mitchell in the farm and mill property for which he agreed to pay certain indebtedness of hers, but not the judgment of appellee, and gave Mrs. Mitchell his

note for $1,200 due in five years, and satisfied a debt due him from her for other sums.   He denies that he agreed to pay the appellant's judgment in his contract of purchase with Mrs. Mitchell, but as to that judgment his contract with her was only one of indemnity for her benefit only.   That he agreed to hold Ann Mitchell harmless from the payment of complainant's judgment and denies that he ever agreed to pay appellee in whole or in part, and bought Ann Mitchell's interest in the property subject to complainant's judgment. That the land was sold under the Hull mortgage April 22, 1880.

Upon the hearing of the cause the court entered a decree against appellant and in favor of appellee for the amount of her judgment and interest against Ann Mitchell and Knox in the sum of $909.20.   That the restraining orders in the case on the original bill, except as to the payment and retention of said sum, be dissolved, and that as to said sum the restraining order on the original bill be made perpetual, that is, that Mrs. Mitchell should not sell, transfer or in any way encumber it, etc.

On March 29, 1882, the court, on the suggestion of damages on the injunction bond, found that the appellant's damages were as follows:

For two per cent. interest that he had to pay Hull
from July 21, 1881, until the dissolution of the
injunction ..................................$ 79.12
For solicitor's fees................................  65.00
The solicitor's fees of James O. McClellan..........  10.00
To Calvin E. Hull ..............................  25.00

   In all...................................$179.12
decreeing execution against appellee for the respective sums found due.   Appellee assigns cross-error against this decree for damages.

After a careful examination of the evidence we find that it is quite uncertain whether the appellant had in his hands enough money belonging to Ann Mitchell, over and above what he had paid her, to satisfy appellee's judgment or that he agreed absolutely to pay it.

The evidence on these questions which seemed to be made the main issue is very conflicting. It appears, however, undisputed and is agreed by all parties that in addition to the $1,200 note given by appellant to Mrs. Ann Mitchell, and in addition to all other sums that Mrs. Mitchell owed him or that he paid to or for her in payment for her interest, they entered into the following agreement:

"SOUTH ELGIN, Feb. 19th, 1879.

"I agree to pay in full on demand what may appear to be due on a certain note for $600 and stand between her and all loss on a certain note given to Hannah Knox by T. G. Knox. The said Ann Mitchell signing the note as security for one year only, in other words I am to hold Ann Mitchell harmless from the payment of the Knox note.

"V. W. PANTON."

The note above named it is agreed was the foundation of appellee's judgment. It will be observed that this was a creditor's bill filed by appellee against appellant, Ann Mitchell and several others; the two parties above named were both before the court. The court had full jurisdiction and authority to decree payment of appellee's judgment out of any property or credits to be found either in the hands of Mrs. Mitchell or of appellant belonging to her. It is admitted in the counsel's argument for appellant that "in a proper case and that possibly it would have been warranted in this case," the court might have ordered the $1,200 note given by appellant to Mrs. Mitchell to be put up to sale to satisfy the appellee's judgment. If this had been done the note would have been taken from the possession of Mrs. Mitchell and sold in satisfaction of appellee's claim, and then it is not denied that appellant would have been liable to repay to Mrs. Mitchell the full amount of appellee's judgment.

He had received value and had agreed so to do. Appellant had assets in his hands for the purpose of protecting Mrs. Mitchell against this claim. It would be of no advantage to appellant to wait until the money was forced from Mrs. Mitchell by sale of her note to pay a claim he had agreed to protect her against. It had been rendered certain that Mrs.

Mitchell would have the judgment to pay, and the court had within its jurisdiction the means to compel payment. It was then clearly within the jurisdiction of the court to do equity between the parties and to compel the one to pay who ought to pay, and to release the one directly responsible and compel the one ultimately responsible to pay. This would prevent circuity of action, which it is said the law abhors. This is not a suit in equity, where complete justice can be done, and, as we think, has been done here.

It will be seen the agreement on the part of the appellant was to keep Ann Mitchell harmless from the payment of appellee's judgment. A strict compliance with, and a fulfillment of it would require the appellant, when he saw that she was about to be forced to pay the judgment, to step in and pay it off. If he failed to do so and she were compelled to pay it, then there would be a breach of the contract on his part instead of compliance, and an action at law would accrue to Mrs. Mitchell to recover damages for the breach of the contract. His plain duty would be to comply with his agreement and not suffer a breach to occur. The two parties being in that position, and the amount unquestionably being due appellee, what more just and fitting than for a court of equity to compel him to specifically perform his contract by compelling him to pay the judgment to appellee instead of rendering decree against the note in Mrs. Mitchell's hands?

We therefore see no error in rendering the decree against appellant.

The next question in the case is the cross-assignment of errors by appellee assigning for error the action of the court in decreeing that she pay the amount of damages above set forth as attorney's fees in procuring the dissolution of the injunction, and for two per cent. that it is claimed appellant was compelled to pay to Hull on $7,000 from the date of granting the injunction, July 21, 1881, to the date of dissolution, over and above what he would have had to pay him but for the injunction.

And first, as to the attorney's fees, the bill of exceptions, or certificate of the evidence which purports to contain all the

evidence, fails entirely to show the value of any attorney's fees or that any was made necessary on account of the injunction issued July 21, 1881. There must be a record of the evidence upon which these damages are based: Steel v. Thatcher, 56 Ill. 257; Jevne v. Osgood, 57 Ill. 340; Alexander v. Colcord, 85 Ill. 323; Spring v. Collector of Olney, 78 Ill. 101; Albright v. Smith, 68 Ill. 181; Goodwillie v. Milleman 56 Ill. 525; Hamilton v. Stewart, 59 Ill. 331. Such being the case such damages can not be sustained. Again, from the nature of the controversy we are unable to see how the injunction issued July 21, 1881, restraining the master from making a deed on it could have caused any considerable outlay for attorney's fees in defending the suit. There was no separate motion to dissolve this injunction. The whole case was tried and decided on the final hearing, and substantially the same answers and the same evidence were required to defend the suit without as with the injunction.

As to the two per cent. damages recovered, we only find the evidence in the record, first, by the answer of Hull and appellant it appears that the latter purchased the Mitchell farm for $12,000, April 22, 1880, and buying the interest of Hull in the certificate, assigned it to him and placed it in the hands of a custodian to hold to secure Hull for about $7,000, running at eight per cent. interest for fourteen months from March 28, 1881. It also appears from the record, that on July 19, 1881, appellant sold the land to one Kennyon, who agreed to pay Hull $7,000 as part of the purchase money with eight per cent. interest from March 28, 1881. Again it appears that on the same 19th day of July, 1881, appellant, in view of the injunction of July 21, 1881, being about to issue, entered into a supplemental agreement by which the original agreement was so modified that in case the injunction were granted, appellant should pay to Hull the difference between six and eight per cent., being two per cent. on the principal sum due Hull, less such amounts, if any, Kennyon may pay on said principal sum from July 23, 1881, until such time as such deed shall be issued. It is not explained in any way by any evidence in the record how appellant was compelled to

pay that extra two per cent. on the account of the issuing of the injunction of July 21, 1881. It does not necessarily follow that because of the two contracts in evidence and on account of the granting of the injunction, that the appellant would be obliged to submit to such loss.

By the agreement appellant was to deed the land to Kennyon as soon as possible after the certificate of purchase had matured, which would be July 23, 1881. By the terms of the agreement if it was not possible for appellant to deed the land with a clear legal title to Kennyon on account of the injunction, how was this contract violated? But even if the injunction caused a violation of the contract with Kennyon, why was it that this supplemental contract was made?

It does not appear from any evidence preserved in the record, and the certificate of evidence shows all that was heard, that Kennyon desired to take any advantage on account of the injunction. What cause impelled the change of contract, we know not, nor could the court below know without any evidence. The court could not presume damages; they must be shown.

Another reason why there should have been no assessment of damages on the dissolution of the injunction is, that while there was no relief granted according to the prayer of the bill by way of making any portion of the appellee's claim a lien on the certificate of purchase, yet such relief would have been quite proper had not different relief been determined upon by the court.

It will be observed that the judgment of appellee against Mrs. Mitchell was a lien on at least a portion of the latter's interest in the Mitchell farm, especially that portion acquired by her from Nathan Mitchell, her son, and purchased by appellant and by him sold to his wife, Eliza Panton, for her interest in the certificate of purchase in the mill property, subject, however, to the Hull mortgage. It is true the deed from Nathan to Ann Mitchell was not recorded, but the judgment would attach as a lien the same as though it had been. The fact that the unrecorded deed was destroyed, and one was made directly to Mrs. Panton, could not affect the judgment lien.

The latter would take Nathan's one seventh interest from Nathan, subject to the Hull mortgage and appellee's judgment.

The appellant became the purchaser at the master's sale of the Mitchell farm, for the sum of $12,000, being the sum of $2,579,86 over and above the Hull mortgage, and appellant's claim which together, principal and interest, amounted at the date of the sale to $9,420.12.

Then the one seventh of this surplus amounting to $368.55 being Nathan's shares in the land, ascertained by the sale and subject to the lien of the appellee's judgment as before shown, should have been paid to the Master in Chancery, by appellant, the purchaser, for the benefit of appellee's judgment. That was not done, the master delivering to him the certificate, and he, putting it into the hands of a third party as collateral security for the benefit of Hull, whom he owed for the money due him and which he assumed to pay by agreement with him, instead of paying the money to the master. The Mitchell farm having been converted into money by the sale, the lien of appellee's judgment would attach to it instead of the land and the lien would be carried to the certificate of purchase, the bid not having been paid. The remedy by injunction to stop the master from executing a deed until the matter could be settled, would seem entirely proper, and the fact that the court did not make any portion of appellee's decree, a lien on the certificate would not render the suing out of the injunction wrongful from the beginning.

Such being the case it would be improper and highly unjust to decree heavy damages against appellee for wrongfully suing out the injunction when she was only pursuing a lawful remedy and one within the power of the court to enforce, and which the court would no doubt have enforced, at least in part, but for the fact that the court could see that appellee's judgment could be made safe by the personal decree rendered against appellant.

It appears to us also that the proof is quite strong going to show that the only object the appellant had in procuring Hull, in conjunction with himself, to foreclose the mortgage and

procure the sale of the land was fraudulent for the purpose of defeating the appellee's judgment lien on Mrs. Mitchell's interest in the land, whom he had agreed to keep harmless from its payment. He having all the shares united in himself except the two his wife held which no doubt he could have procured without the foreclosure, he proceeds to incur the expense of a foreclosure which he could have avoided by simply paying off the Hull mortgage.

His action, however, appears entirely consistent when the contract of indemnity entered into with Mrs. Mitchell is remembered and his statement that he wanted to procure appellee's judgment as cheaply as possible.

What more efficient step could be taken to procure the judgment cheaply than to deprive it of all security for its payment? Another fact in the case was that appellee was claiming a lien on the interest of Mary A. Campbell, another heir of the deceased, Mitchell, who had, while the judgment was in force, deeded it to her mother, and the latter had deeded it to appellant.

If this be so he would not be entitled in a court of equity to claim damages for loss arising from a state of affairs which he by his fraudulent conduct contributed to bring upon himself and which, connected with all the other facts, entitled appellee originally to the injunction complained of. For these reasons the decree of the court below against appellant is affirmed, and the decree against appellee for damages in the alleged wrongful suing out of the injunction, and to reverse which appellee has assigned cross-errors, is reversed.