**John M. Collins et al. v. Emanuel Weigselbaum et al.**

Gen. No. 12,856.

1. INJUNCTION—*court should consider affidavits in opposition to motion for, notwithstanding defendants have not plead.* Upon an application for a preliminary injunction, affidavits in opposition to the motion should be heard and considered by the court, notwithstanding no plea or answer has been interposed.

Collins v. Weigselbaum.

2. INJUNCTION—*when granting of, against police department, improper.* Where the affidavits presented in opposition to a motion for a temporary injunction against the police department rebut all of the allegations of the bill which charge a threatened illegal invasion of property, the injunction should be denied.

Appeal from interlocutory order of injunction. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1905. Reversed. Opinion filed April 19, 1906.

LEON HORNSTEIN, for appellants; JAMES HAMILTON LEWIS, Corporation Counsel, of counsel.

JACOB WARD, SIGMUND E. LOEB, for appellees; JESSE LOWENHAUPT, of counsel.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from an interlocutory order of injunction, granted on a bill filed by appellees. The bill alleges substantially as follows: That Emanuel Weigselbaum and Louis Less are now and have been in the past engaged in the city of Chicago in the brokerage business, in buying and selling for others on commission stocks and bonds under the firm name of Weigselbaum, Less & Co., and at 222 and 223 Postal Telegraph Building in said city since September 1, 1905; that they are using certain books, desks, telephones, chairs, electric wires, electric tickers and other furniture, fixtures and appliances on said premises, and that these are necessary for their business; that they have rooms and equipment for the accommodation of their customers and for receiving market quotations from various sources to enable said customers to conduct their trades and transactions in stocks and bonds; that they have a large patronage, have acquired the good will in said business by their conduct of the same and by fair dealing with the public; that said patronage and good will have a value of a monthly return of profit of three hundred dollars; that they cannot conduct their business without the aid of the appliances and things mentioned; that said business is a lawful business

and not in violation of any statute or ordinance; that they are not engaged and have not during the period mentioned been engaged in gambling or in conducting a bucket-shop, and have not allowed their premises or said appliances to be used by others for the purpose of bucket-shopping, and that in all transactions conducted on said premises during said period it was expressly agreed and understood that actual delivery of the articles involved was contemplated and intended; that they are not engaged in any other business; that John M. Collins, general superintendent of police of the city of Chicago, Clifton R. Wooldridge, a police officer of said city, and other members of the police force of said city are combining and confederating and have threatened and intended and now threaten and intend to close up complainants' business and seize, confiscate and destroy said appliances and apparatus; that it is their purpose to make a raid upon complainants' premises for that purpose; that they have declared their intention and will so do unless restrained by the court, and that in case they carry out their threat, complainants will be irreparably damaged; that if notice is given of application for injunction, their rights will be prejudiced; that they have no adequate remedy at law; that the profits of said business cannot be estimated in damages, and that if not restrained such persons will make repeated raids and seizures and involve said complainants in a multiplicity of suits; that the individuals designated to make seizures of that kind and their superior officers are almost without exception insolvent. Process and a temporary injunction are prayed.

In opposition to the motion for a temporary injunction the defendants, John M. Collins and Clifton R. Wooldridge, appellants here, presented and offered to read the following affidavits:

"Affidavit of John M. Collins. Affiant states that he is chief of police of the City of Chicago; does not know complainants; has made no threats of any kind concerning them, or their place of business; is not combining or confederating with any one for the purpose of raiding or

closing up said place of business, or to confiscate or destroy appliances or apparatus of complainants; it is his duty to prosecute keepers of bucket-shops and in case complainants run a bucket-shop he will be obliged to prosecute them, but is not actuated by any other motive than to do his duty as a public officer; has no personal knowledge as to whether complainants are running a bucket-shop, and by reason of the large range of his duties such knowledge can only come to him through others; in case investigation should reveal that a bucket-shop is in operation at said place of business, the subordinates of affiant are authorized and instructed to act only in conformity with the law and in pursuance of legal process issued by a court of competent jurisdiction; in case complainants do not violate the law, affiant will not molest them in any way."

"Affidavit of Clifton R. Wooldridge. Affiant says that he is a police officer in the employ of the City of Chicago; has made no threat of any kind or nature against the complainants or either of them; is not combining or confederating with others; has not threatened and does not now threaten to close up the business of complainants; has not in any way said or intimated to any one that he intends to destroy the appliances and apparatus of complainants; also that on or about September 19, 1905, he visited the place of business of Emanuel Weigselbaum, one of the complainants, which is designated as Weigselbaum, Less & Co. in the bill of complaint; that at said time complainant did not appear to be doing any business, and stated to affiant that he had not opened his place of business; that there were workmen at work at the time connecting wires and doing other work of a character that indicated that such place of business was not yet open for business; and that consequently complainants had no patronage or good will so far as said business was concerned; also says that he knows the record of Weigselbaum; that in 1902, Weigselbaum made his application to the collector of internal revenue and qualified as a 'Broker, class No. 2', for the purpose of conducting a bucket-shop; that said classification was the classification

under which licenses were granted for bucket-shops under the revenue law then in force; that Weigselbaum was then conducting a bucket-shop under the firm name of Weigselbaum & Hill, Eugene H. Hill being the other member of said firm; also that at the time he spoke to Weigselbaum at his place of business on September 19th, Weigselbaum stated that he was not a member of any board of trade or stock exchange, but intended to place his trades with the Odell Commission Company, of Cincinnati, Ohio, with Sid McHie, of Hammond, Indiana, and with the Cella Commission Company, of St. Louis; and affiant avers that all three of the last named concerns are now operating bucket-shops and that it is well known that they are in the bucket-shop business; that he told said Weigselbaum that if he would conduct a legitimate brokerage business there would be no interference on the part of affiant or any other member of the police force with said business; that nothing was said at that time which Weigselbaum could construe as a threat to close up said business; and that there is no intention on the part of affiant to take any steps against Weigselbaum unless it should appear that he was conducting an unlawful business; also avers that he verily believes that the only purpose of the complainants in filing their bill is to hinder and delay the police department of the city of Chicago and to prevent criminal prosecution in case it should appear they were conducting an unlawful business."

"Affidavit of John Hill, Jr. Affiant says that he is and for more than twenty-five years was a member of the Board of Trade of the city of Chicago, and is at present in its employ; that for ten years he has devoted almost his entire time to the investigation and prosecution of concerns doing a gambling business in the guise of legitimate trading, especially bucket-shops; that he has investigated the methods of more than five hundred bucket-shop keepers who claim to be brokers and to be engaged in other like legitimate business, and is thoroughly conversant with the methods of trading on all the exchanges in the country and especially the Chicago Board of Trade, New York Stock

Exchange and Consolidated Exchange of New York; that there are a large number of different stocks and bonds traded in on the New York Stock Exchange, of which fifty or sixty are very active and are quoted by means of tickers throughout the country; that these are the stocks ordinarily traded in by brokers outside of the city of New York; that those who legitimately deal in same must have some connection with the New York Stock Exchange, directly or otherwise, and that unless a broker has such connections or means of executing his orders he is unable to do a legitimate business; that the various stocks are not within the reach of persons who have no such facilities, and except in rare instances orders cannot be filled unless they are actually executed on one of the two said exchanges in New York. Affiant further says that men who operate bucket-shops change the style, name and character of their business very often; that during the last few years the police of the city of Chicago have been very active in suppressing bucket-shops; and few of them are now doing business, and that these almost invariably are operated by men who have run similar places before beginning the businesses now in operation; that in most cases such change has been made for the purpose of avoiding prosecution and has not been such as to change the business from a bucket-shop to a legitimate brokerage concern; that Emanuel Weigselbaum has been engaged in keeping a bucket-shop for years in said city; and affiant verily believes that the new concern, which was started under the firm name of Weigselbaum, Less & Co., is a bucket-shop, which has been started under the new name for the purpose of evading police interference; that it frequently takes a great deal of time and diligence to secure evidence necessary to convict keepers of a bucket-shop of a criminal offense; that one of the most important features of such criminal prosecutions is the seizure of the books and papers of such concerns, without which in almost all cases the prosecution would fail; that if an injunction be issued in said cause restraining the police department of the city of Chicago from making a raid, it would amount

virtually to giving said Weigselbaum and his partner a license to operate a bucket-shop, and would make it practically impossible to prove any unlawful trading, no matter how often it violated the law concerning bucket-shops."

Counsel for complainants objected to the reading of the affidavits, on the ground that no answer had been filed in the cause by the defendants, which objection the court sustained, and, on cross-motion of the defendants, allowed the affidavits to be filed, but refused to examine or consider them, and entered an injunction order on the bill alone. The court erred in refusing to permit the affidavits to be read and in refusing to examine or consider them. In Village of Seneca Falls v. Matthews, 9 Paige, 504, it seems that the vice-chancellor refused, as in the present case, to permit affidavits to be read by the defendant in opposition to the application. On appeal, the court, Chancellor Walworth delivering the opinion, held that the vice-chancellor erred in refusing to hear the affidavits, and said: "When the complainant is directed to give notice of his application for an injunction, or when the defendant is required to show cause why a preliminary injunction should not be granted, whether a temporary injunction is or is not allowed in the meantime, the defendant has a perfect right to introduce his own or any other affidavits for the purpose of showing that the injunction should not be granted as asked for."

In Kean v. Colt et al., 1 Halsted's N. J. Eq. 365, the court, ib. 374, say: "It it every day's practice to hear an answer read as an affidavit, against a motion for an injunction. I cannot doubt that the court may hear the defendant by affidavit." No answer had been filed in the cause.

In Blunt v. Hay, 4 Sandford's Chan. R. 362, on motion for an injunction on the bill, affidavits were read in opposition to the motion, to the reading of which the complainant objected, in regard to which the vice-chancellor said: "The motion for the injunction is now made, after appearance and upon notice. I perceive no good reason why it may not be made and resisted, like any other motion to the

court, upon such affidavits and other papers as are pertinent, which either party may be able to produce." See also 2 Beach's Mod. Eq. Pr., sec. 767.

The rule that when an injunction is moved for on the bill, the defendant may, before answer, oppose the motion by affidavits, is a just one, and that a contrary rule would be well calculated to work injustice is well illustrated in the present case. On motion for a temporary injunction on a sworn bill, the bill, although a pleading, is considered merely as an affidavit for the purpose of the motion, hence the admission of affidavits in opposition to the motion is reasonable and logical. In this case the bill was filed September 19, 1905, one of the days of the September term of the court, and the defendants were not required to answer till the next October term. Until that time they had, by law, time to prepare their answer. Whether the defendants were notified of the motion by complainants, does not appear in the record; but, September 26, 1905, they entered their appearance, and on the same day the injunction was granted. The affidavits were filed and before the court, and may be considered here, and we think them a full and complete answer to the allegations of the bill, and that the injunction should not have been granted. The defendants are members of the police force and officers of the law. They have no private or personal interest in the matter of the bill, and it is not to be presumed that they will act in the premises otherwise than officially, and as they are authorized by law to act in the discharge of their duty.

The decree will be reversed.

*Reversed.*