DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1924.

---

## H. E. McNevin, Appellant, v. A. W. Stoolman and Lois Stoolman, Appellees.

### Gen. No. 7,732.

1. INJUNCTIONS—*propriety of presenting opposing affidavits or facts on application for preliminary injunction.* On motion for a preliminary injunction to restrain defendants from transferring certain shares of corporate stock to anyone but complainant or from voting such shares or allowing them to be voted at a certain stockholders' meeting, though the statutory notice was given it was not the duty of defendants in the absence of an answer to present to the court at the hearing the fact that the stock had been transferred to defendants by the complainant.

2. INJUNCTIONS—*right to damages on dissolution of temporary injunction.* Upon dissolution of a temporary injunction which was issued upon notice, defendants should not be in a position to demand damages when proper methods of resistance to the issuing of the injunction were not made by defendants at the time the injunction was issued.

3. INJUNCTIONS—*labor of counsel in preparing answer to non-essential matters as element of damages on dissolution of injunction.* In allowing damages upon dissolution of a temporary injunction, the labor of counsel in preparing the answer as to matters not necessary to a determination of the question whether the injunction should be dissolved should not be considered.

4. INJUNCTIONS—*matters affecting quantum of damages on dissolution of preliminary order.* Upon dissolution of a preliminary injunction restraining defendants from voting or transferring cer-

(449)

tain shares of stock which complainant claimed was owned by him and had been delivered to defendants for voting purposes during complainant's employment as manager of a certain theater, which employment had been terminated by defendants, where the answer alleged transfer of the stock before notice of application for the injunction, which, under the averments of the bill, amounted to an unlawful conversion by defendants, that fact should materially affect the *quantum* if not the right to damages.

5. INJUNCTIONS—*propriety of award of damages on dissolution of preliminary order.* In awarding as part of the damages allowed upon dissolving a preliminary injunction fees paid or incurred for services of attorneys employed by defendants, the value of the subject-matter of the injunction must be considered, and where the sum allowed apparently included unnecessary preparation as for a trial on the merits and needless expenditure for counsel services because of defendant's groundless fears as to the detrimental effect of the injunction upon his business, the order awarding damages will be reversed.

Appeal by defendants from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1924. Reversed and remanded. Opinion filed October 22, 1924. Rehearing denied February 24, 1925.

H. LEONARD JONES and HERRICK & HERRICK, for appellant.

DOBBINS & DOBBINS and GREEN & PALMER, for appellees.

MR. JUSTICE CROW delivered the opinion of the court.

This cause comes on appeal from an order of the circuit court of Champaign county assessing damages upon dissolving an injunction, allowed at suit of appellant against appellees. The subject-matter of the controversy is three shares of stock in the Rialto Theater Company of Champaign, of the par value of $50 each, originally subscribed for and issued to appellant. McNevin, at the time of the organization of the Rialto Theater Company, was employed as man-

ager of the Virginia Theater operated by the Stoolman-Pyle Corporation, also of Champaign, the stock of which was owned or controlled by A. W. Stoolman. It is contended by McNevin in his bill that the agreement was that his stock should be voted as Stoolman desired so long as appellant should be retained as manager of the Virginia Theater. This charge in the bill is denied in the answer. It is further averred that the agreement between Stoolman and appellant was that appellant should deliver to him the certificate for the three shares of stock and that he should have possession thereof as long as appellant was retained as manager of the Virginia Theater; and that Stoolman should be allowed to vote the stock at all meetings of stockholders held during such management; and when he no longer was retained as manager the certificate should be immediately returned. The bill charges Stoolman never at any time had any other right or title, legal or equitable, to it, and that he held it in trust for the complainant under said agreement.

November 30, 1922, the bill avers, Stoolman "dispensed with the services" of McNevin as manager of the Virginia Theater; that he demanded the return of the certificate, which was refused, Stoolman denying the right of appellant to have or vote the stock represented by it. The bill further charges that Stoolman, claiming to own more than one-fifth of the outstanding shares of stock, on September 11, 1923, issued a call for a special meeting of stockholders to be held September 21, 1923, sending a notice of the meeting to Charles C. Pyle, a stockholder, but none to McNevin, the purpose stated in the notice being "to clear up any question as to who are directors of the corporation and to fill vacancies in the directorate" and for other purposes.

The prayer is for an injunction restraining Rialto Theater Company, A. W. Stoolman, Lois Stoolman, their agents, attorneys or assigns, or either of them,

from transferring said shares of stock to any other person than the complainant on the stock books of the corporation, or voting or allowing them to be voted at any stockholders' meeting to be held on September 21; and restraining A. W. Stoolman from selling, assigning or voting the same in his name until further order of the court; and from interfering in any manner with the right of the complainant to control said stock. The prayer as to Lois Stoolman is that she be restrained from entering a transfer of the shares on the books of the corporation to A. W. Stoolman or any other person; or issuing new certificates in lieu thereof as the pretended secretary of the Rialto Theater Company, or otherwise; that it be decreed that A. W. Stoolman has no right, title or interest in and to said three shares or any of them, but that the same are owned by complainant; that Stoolman be required to surrender and deliver over the actual possession of the certificate for the shares to complainant, and for general relief.

September 19, notice was served on defendants that on September 20 application would be made for an injunction as prayed, the hearing being set for that day by the court. On the day set for the hearing, leave was asked to file verified amendments to the bill. This was denied "for the reason no sufficient notice had been given prior to the time set for the hearing on said motion for temporary injunction, and it was ordered by the court that the proposed amendment be treated as a supporting affidavit at the hearing." The injunction was allowed and issued as prayed in the original bill, without resistance by defendants though their counsel were present, and bond fixed at $3,000.

October 19, notice was served by defendants that on October 24 they would present a motion to dissolve the injunction. October 22, A. W. Stoolman filed an answer which was adopted by Lois Stoolman as her answer, denying every material averment of the bill.

The pertinent portion of the answer so far as it affects the disposition of this case, after averring complainant paid nothing for the stock, but that it was issued to him at the instance of defendant, A. W. Stoolman, as "qualifying stock," is:

"And this defendant avers that promptly upon issuance of said certificate for three shares of the common stock of the Rialto Theater Company to said H. E. McNevin, the said certificate was by the said H. E. McNevin duly assigned in writing, over the signature duly witnessed, of the said H. E. McNevin to this defendant, and the said certificate, pursuant to the said assignment, duly delivered by the said H. E. McNevin to this defendant, which said assignment, endorsed on the back of said original certificate, is in the words and figures following:

"For value received, I hereby sell, assign and transfer unto A. W. Stoolman, three shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint A. W. Stoolman attorney to transfer said stock on the books of the within named corporation with full power of substitution in the premises.

Dated March 2, 1922.          H. E. McNevin.

In the presence of Francis Lemmon."

The answer avers the meeting called for September 11, 1921, was held as called, but the three shares of stock were not voted because restrained by the court from being voted; that said stock did not belong to McNevin and was not outstanding; but was in the stock certificate book pursuant to the direction and assignment of McNevin; that at the time of filing the bill and prior thereto the certificate was not outstanding but had been returned to the secretary and canceled and a new certificate in lieu thereof issued to Stoolman, to whom the original had been assigned. It is averred in the answer that the bill was a fraud on the court because it charged the stock was outstanding; and the bill being verified and taken as the truth did not present to the court the full facts, but concealed the fact the certificate had been as-

signed; and that complainant was completely estopped from asserting the bill was not filed in good faith. It denies the right of complainant to attend any meeting or participate in any way in corporate action in the Rialto Company.

The court dissolved the injunction and suggestion of damages was filed, the court on hearing allowed $1,200 as damages. The form of suggestion and elements of damages claimed are not irrelevant in the consideration of this record. Three thousand dollars are claimed by reason of defendants' being compelled to answer, having incurred liability for the payment of that sum for reasonable fees and charges of their solicitors and counsel, as well as expenses in and about procuring the dissolution of the temporary injunction, rendered necessary by reason of the wrongful suing out of the same; and in a like sum for expenses of procuring evidence for use in court to effect the dissolution as aforesaid; and the like sum for damages caused to these defendants as principal creditors of and stockholders in Stoolman-Pyle Corporation, owner and operator of the Virginia Theater, through the operation of Rialto Theater by the said complainant and others acting in confederacy with him in competition with the Virginia Theater, instead of in conjunction and harmony therewith, by means of and during the continuance of the preliminary injunction.

The record consists of 479 pages and the abstract 312 pages. The subject-matter of the litigation presented by the pleadings is whether appellant or appellee, A. W. Stoolman, is owner of three shares of stock of par value of $50 each, and the right to vote them. The question here presented is whether the court erred in allowing damages and, if not, whether the damages allowed are excessive.

From the foregoing statement it is evident at "first blush" there is far more in the record than is necessary to determine the question whether damages

should have been allowed upon dissolution and, if so, the amount. The propriety or legality of the order of dissolution nor the record upon which it was made is not before us for review. But the nature of the injunction and its purpose and certain legal and equitable principles controlling its allowance and dissolution may be considered.

The issuance of an injunction is matter of judicial discretion. The writ here was allowed upon notice. Under the statute notice must be given before granting an injunction in all cases unless it shall appear to the court from the bill or by affidavit accompanying it that the rights of complainant will be unduly prejudiced unless granted at once and without notice. Appellant insists that it was the duty of appellees to present to the court, at the time application was made for the order, the fact that the stock had then been transferred to appellant. In reply, counsel for appellees cite *Dunne v. Rock Island County*, 273 Ill. 53, as authority that affidavits should not be filed or considered in the absence of an answer, on motion for a preliminary injunction in any case. The court so held in that case and, without attempting to distinguish it, we cheerfully follow it. It was decided otherwise in *Phelps v. Foster*, 18 Ill. 309, and in authorities cited in *Collins v. Weigselbaum*, 126 Ill. App. 158. We do not refer to the latter case as authority. The text and cases in 32 Corpus Juris 305 support the early rule. In view of the last utterance of the Supreme Court, contention of appellant on this point cannot be sustained.

It was suggested by counsel for defendants, however, at the hearing on application for injunction, the bill was lacking in material averments to authorize the injunction order. There is, we think, much force in this suggestion and if pressed upon the attention of the court, or if a demurrer for want of averment of sufficient facts to entitle complainant to injunction had been interposed, the court would have accorded it

the consideration it rightly deserved. These are proper methods of resistance to such an order. Appellee ought to be in no position in a court of equity to demand damages when he was at fault in not interposing such proper resistance as would probably have controlled judicial discretion in his favor. Some purpose underlies the statutory requirement of notice. If notice was not designed to enable defendants to meet the supposed equity of the bill by affidavits nor by raising the question of the sufficiency of the bill, it would seem that in no case can damages be avoided unless sufficient time has been allowed to prepare an answer. The Uniform Stock Transfer Act [Cahill's Ill. St. ch. 32, ¶ 229 *et seq.*] authorizes an impoundment or injunction in cases like this to preserve the *status quo*.

If, as contended by appellee, the legal and equitable title to the shares of stock had become vested in him at the time the injunction was granted, it was not operative against him injuriously. He controlled enough to hold a stockholders' meeting and he did hold it and accomplished his purpose in so doing, although the three shares of stock in controversy were not voted. One ground for assessment of damages against appellant is the alleged disastrous consequences of the pendency of the injunction on the fortune of the Virginia Theater in which appellee was interested. The greater portion of the record is filled with evidence as to the mismanagement of the Virginia Theater and the collusion of Pyle and appellant in its operation to the detriment of Rialto Theater. That evidence has no bearing on the question as to whether the injunction issued in this case was wrongfully issued, nor any legitimate place in ascertaining damages at the inquiry, though it might control appellee as a matter of business policy. It was objected to by appellant, and counsel for appellee attempts to justify it on the ground the condition "warranted strenuous effort to dissolve the injunction." But appellant was

then out of the management and the injunction did not and could not affect either theater. The answer injected that issue. Whether it is material on the question left in the bill the answer in this case is not before us. But the labor of counsel in preparing the answer was not necessary to a determination of the question whether the injunction should be dissolved. While the filing of the answer was necessary before a motion could properly be presented for dissolution, the contents and extent of the answer filed were material only in forming the issues on the merits of the cause. They were not elements to be considered in the assessment of damages. No compensation should be allowed for any part of that service.

While by answer it is averred the certificate had been transferred when notice of application for the injunction was served, the charge in the bill that defendants were fraudulently claiming to be owners of the stock represented by it is not thereby obviated. If it be true that appellant was the owner of the stock by subscription and that it was assigned to appellee for the purpose only of enabling him to vote it at stockholders' meetings under an agreement between them to that end; and if it be true that afterwards appellee "dispensed with the services of appellant" in the Virginia Theater and denied his right to the return of the certificate or the stock represented by it, it was fraudulently done. He asserted a title to the shares which, transferred to another for value and without adverse claim to it of record, would defeat complainant's title. It amounted to an unlawful conversion of something he had agreed to restore under the averments in the bill, under a false claim of right. Under those circumstances it was not "in fact done honestly." No damages ought therefore on principle be allowed. But no authority has been cited and we know of none that authorizes us to so hold. But the principle should materially affect the *quantum*, if not the right of damages.

It is contended by counsel for appellant that where the injunction is merely ancillary to the principal relief sought and its dissolution incidental to the defense made, counsel fees incurred in defending the suit generally, cannot be recovered as damages. Several cases are cited in support of the rule. They do support it. But an examination discloses they were decided after trial on the merits and the injunction dissolved upon decree dismissing the bill for want of equity. Naturally the fate of injunctive relief followed that of the merits. *Milligan v. Nelson*, 188 Ill. 139, where damages were denied, may be cited in support of the rule for it quotes the previous cases on that question. In all of them there was no hearing on dissolution distinct from the merits of the bill. *Moriarty v. Galt*, 125 Ill. 417, is a typical case, damages being denied, the court saying: "It is apparent the expenses incurred on account of solicitors' fees would have been substantially the same if no injunction had been sued out." Showing the strictness with which the rule is applied, in the *Milligan* case it is said where the only relief sought is injunction, the general rule as to damages applies. It is only where the injunction is dissolved upon specific application for that purpose if services rendered are distinct from that of preparation of the case generally, damages may be assessed. Services rendered in preparation for resistance of a permanent injunction at the trial cannot become an element of damages on motion to dissolve any more than a defense upon any other ground in any other case. *Lambert v. Alcorn*, 144 Ill. 313 (329 *et seq.*); *Lawrence v. Traner*, 136 Ill. 474 (488); and *Landis v. Wolf*, 206 Ill. 392 (400).

Reference has been made to the character of evidence in the record. To excerpt it would be an unnecessary labor and would extend this opinion to no useful purpose. It may be stated, however, that five attorneys were employed in the case, and that the record shows the aggregate time they were engaged

in the preparation and presentation of the motion to dissolve was 29 days. Two firms of attorneys were employed. One attorney occupied one day in examining the principal of "balancing of conveniences." Days in the office of counsel were consumed by conversation with Stoolman talking over the facts. Evenings and nights were consumed in like service. The testimony of one witness occupies 14 pages of the abstract with detail of services rendered before and after the order for injunction. Much of the service in this connection was examining the law with regard to the validity of stock transfers. There was nothing difficult about that in this case. Another question was that of relevancy and competency of evidence on motion to dissolve. It is apparent that was not a complicated matter. Part of the time was occupied in preparation of affidavits to dissolve and they were full of irrelevant and immaterial matter that ought never to have been put in the record. Witnesses for appellee testified, with these and many other like irrelevant facts placed before them hypothetically, that in their opinion $1,600 to $1,800 would be a reasonable and customary fee for those services, customarily made in a case of this character in the circuit court where the fee is the subject of contract between attorney and client. There was other similar evidence as to the question of value of services. Without going into needless detail it is clear the testimony as to value of services rendered is speculative, not proper as the basis for assessment of damages at the hearing, and the sums fixed are exorbitant and of a punitive character. Defendant might employ as many attorneys as he wished. But he cannot be allowed to fasten on complainant the cost of their employment beyond what would be reasonable for the particular service of procuring a dissolution of the preliminary injunction. The value of the subject-matter of that injunction must be considered. No one can believe from the evidence in the large record the injunction

affected to any extent the business of Stoolman, or his financial fortune. The answers in the record show they were directed to a defense against the whole bill. While it was necessary to have the injunction dissolved that it appears from the answer there was no equity in the bill, it was not necessary to rebut by proof the want of equity as at the trial. That could only be done at the full hearing. It was enough that on the coming in of the answer and want of equity there appearing, by affidavits or otherwise, it was made to appear the court had abused its judicial discretion in allowing the injunction.

The court found defendants had sustained damages in the sum of $1,200 by reason of the wrongful issuance of the injunction and found such damages to be "limited to the reasonable value of the necessary services actually rendered by defendants' solicitors in procuring the dissolution of the injunction." On measure and *quantum* of damages, it is said in *Jevne v. Osgood,* 57 Ill. 340 (346):

"The design of the statute is not that the defendant shall, where the injunction is dissolved, recover his attorney's fees for all that has been or may be done in the case. To give the statute such an unreasonable construction would render it an instrument of great oppression. It was only intended to reimburse the defendant for money he has paid, or for which he has become liable, on motion to dissolve."

The danger of great oppression by the allowance of exorbitant fees and the tendency to deter litigants from a resort to the courts to secure their rights is emphasized:

"But," the court say, "a reasonable fee and fair compensation should be allowed to defendant for money actually paid to an attorney * * * to procure the dissolution—such a fee only as he would pay if he had no hope of having it reimbursed."

Chief Justice Scholfield, in *Alexander v. Colcord,* 85 Ill. 323, where the court had allowed $2,500, the property being worth $2,300, said:

"That these estimates are extravagant and beyond all reason is clear, by reference to the character of the controversy, as disclosed by the record, and the value of the property in litigation.  *  *  *  There was no serious controversy in regard to the facts, and there was no necessity for the examination of many witnesses, nor were many examined.  *  *  * A serious objection to all the evidence in respect to attorneys' fees is, no discrimination is made between services rendered in this case generally and services which were strictly necessary to procure a dissolution of the injunction."

In *Dempster v. Lansingh*, 234 Ill. 381 (389 *et seq.*), the rule is approved.

Many cases might be cited in support of the equitable principle announced, but it is unnecessary. Following these principles we must hold the damages allowed are excessive; that the evidence in the record does not discriminate services strictly rendered in procuring the dissolution of the injunction from preparation of the cause for trial on the merits. While the court finds and adjudges the damages allowed are limited only to services in the dissolution proceedings, from the mass of evidence before the court admitted over objection of appellant, the excessive judgment must be attributed to the influence, unconsciously exerted, of the evidence not proper to be considered in this proceeding. The fright of appellee cannot be assuaged by, nor can it justify, compensation of his counsel beyond. the measure long established by the Supreme Court and adhered to from an early day to the present. The contention he apprehended, "the saving of a lifetime would be swept away from him" because of the injunction, is not believable, and if it were, could not be compensated by compelling appellant to pay him exorbitant fees for his solicitors if evidence showed he had paid them, or promised to pay them, for procuring the dissolution of the injunction. The order will be reversed and the case remanded.

*Reversed and remanded.*