# JEVNE & ALMINI

*v.*

# URI OSGOOD *et al.*

1. VENDOR AND PURCHASER—*rescission of contract by parol.* Where the parties to a written contract for the sale of land agree by parol to rescind the same, one of the conditions of such agreement being that the vendee shall return to the vendor the written contract to convey, it is *held*, that although the vendee perform all the other conditions, if he refuse to surrender the written contract he thereby keeps it alive, and refusing to release the vendor from his obligation to convey, he continues his own liability to pay the purchase money.

2. The verbal agreement to cancel could be set up as a defense to a bill by the vendor, to compel a surrender of the written contract, as being within the statute of frauds. He is not required, in such case, to abandon his claim for the purchase money and run the risk of having to perform his agreement to convey.

3. And even though the vendor could, under the terms of the written contract, declare a forfeiture on account of default on the part of the vendee, and thus terminate his own liability, he would not be bound to do so under such circumstances, but might still hold the vendee liable.

4. JURISDICTION IN CHANCERY—*defense at law.* Where a purchaser of land has an opportunity to defend a suit at law brought to recover the purchase money, on the ground that the contract of sale has been rescinded, but omits to interpose such defense, he will be deemed to have waived it, and can not, after permitting a judgment to be recovered against him, come into a court of chancery and set up the fact of such rescission as a ground for an injunction to restrain the collection of the judgment.

5. A party failing to make a defense at law, will not be permitted to come into equity and have the subject matter of such defense allowed, unless he can show he was prevented from making his defense at law by accident, fraud or mistake.

6. SAME—*to enforce a judgment.* A vendor of land having recovered a judgment at law for a portion of the purchase money, the vendee sought, by bill in chancery, to enjoin the judgment, on the alleged ground that the contract had been rescinded. The vendor, by cross bill, set up his judgment, and asked a decree for its payment: *Held,* the mere fact that he held the judgment, although it was for purchase money, did not entitle him to relief in equity, such as that sought by the cross bill.

7. DAMAGES—*on dissolution of injunction—attorneys' fees.* The statute providing for an assessment of damages on the dissolution of an injunction, was only intended to reimburse the defendant for moneys which he has paid, or for which he has become liable, on the motion to dissolve. He can not recover for attorney's fees arising from litigation upon a cross bill in the same suit, but not connected with the injunction, or from litigation under the original bill subsequent to the hearing on the motion to dissolve.

8. Nor, in case the defendant is himself an attorney and attends to his own case, can he be allowed a fee for his own services.

9. In ascertaining the amount which should be allowed as attorney's fee in such proceeding, it is not enough to prove by attorneys that the sum named is, in their opinion, reasonable. The inquiry should be, what has the defendant paid, or become liable to pay, and is it the usual and customary fee paid for such services. The chancellor should refuse to allow exorbitant and oppressive charges.

10. In this case, the sum of $250 as an attorney's fee for entering and trying a mere motion to dissolve an injunction, was deemed excessive.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. RANDALL & FULLER, for the appellants.

Messrs. URI OSGOOD & SON, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in equity, filed by appellants in the circuit court of Will county. The bill alleges that they entered into a contract with Osgood for the purchase of a lot in the city of Joliet, for the sum of $1,000; and to be paid—$400 in painting and fresco work on the Universalist church, $200 on the first of September, 1859, and $200 on the first of September in each of the years of 1860 and 1861, with interest at the rate of 10 per cent from the first of September, 1858, the purchasers to pay all taxes and assessments, and on failure to do so, the sums thus neglected to be paid to become part of the purchase money. On payment as agreed, Osgood was to convey the property to complainants. The contract contained a clause of forfeiture, at Osgood's option, in case of failure to pay; the frescoing and painting to be done in ten weeks from the time of entering into the contract, which was the 24th of July, 1858.

The bill alleges that the painting and frescoing were done to the satisfaction of Osgood, and were accepted by him, who gave to them a receipt for the same; that being unable to meet the first cash payment, they saw Osgood, and it was mutually agreed the contract should be at an end, and they supposed it was, but having failed to cancel the agreement, Osgood, on the 26th of September, 1860, commenced a suit in the Will circuit court on the agreement; that, thereupon, one of the complainants saw Osgood and a new settlement was made, and Osgood, in consideration of $50 then paid, and $76 to be paid in twenty days, released them from the contract, and agreed to dismiss the suit at complainants' costs; that complainants afterwards paid Osgood in work, to his satisfaction, $103.40, which more than paid the $76 and the costs of the

suit. At the last settlement, when they rendered their bill of work, Osgood gave them a receipt.

Osgood, on the 16th of November, 1866, notified them the costs had not been paid, when they offered to pay the balance if it exceeded their bill over the $76 ; but he denied that the balance was to be so applied. Osgood did not dismiss his suit, but on the 24th of February, 1867, took judgment for $787 damages, and $27.70 costs ; that they had no knowledge of the judgment until the following October, when the sheriff of Cook county served an execution issued thereon, upon them. The bill charges that the judgment was fraudulently obtained, is unjust, and prays an injunction perpetually restraining its collection.

The answer admits the sale was made, the agreement entered into, and that complainants did the work on the church, and giving the receipt, but charges they never fully did the same. Defendant denies any arrangement was made by which the contract was rescinded, although complainants, separately and at different times, called on him to procure its rescission ; that after the third payment had matured, he brought suit against complainants ; that after the suit was brought, Almini came to Joliet to procure a settlement, and it was then agreed that complainants should forfeit the $400 paid in painting, &c.; should pay $50 on the contract, and complainants should furnish paints, and paint defendant's house, blinds and fence, and pay the costs of the suit and surrender the contract, and defendant would then dismiss the suit ; that the $50 was paid, the painting partially done but not completed, but he was willing to have accepted it and dismissed the suit, if they had paid the costs ; that he wrote complainants to return the contract, and sign a stipulation that the suit was to be dismissed at their costs, unless they preferred to receive a deed for the lot, which he was ready to execute, but they did not return the agreement, or sign the stipulation ; admits he obtained judgment, but denies complainants ever paid the costs or surrendered the contract, as agreed.

Osgood and Beveridge filed a cross bill, setting up substantially the same facts contained in the answer, offering to convey when payment should be made, and praying a decree for the amount due on the contract, and for damages on the dissolution of the injunction. On motion, the injunction was dissolved, and a suggestion of damages was filed, and afterwards a trial was had on the bill and answer thereto, the cross bill and answer thereto, replication, exhibits and proofs, when a decree was rendered that complainants pay the full amount of the judgment, including damages, costs, and interest thereon; also all taxes and assessments which have been paid by Osgood on the lot, and the sum of $250 damages for his reasonable attorneys' fees, making in the aggregate the sum of $1,562.49, and costs of the suit. To reverse which the record is brought to this court, and errors are assigned thereon.

Have appellants shown themselves entitled to the relief sought? They show that they saw Osgood, and terms were agreed upon for the cancellation of the contract, but it was never consummated. The contract which they held on Osgood was not returned as agreed. They had no right to retain it, when it was a part of the conditions upon which a cancellation was to be made that it should be returned. Osgood repeatedly wrote them to return it and pay the costs, and he would dismiss the suit, and thus consummate the arrangement for rescinding the purchase, but insisted he would prefer their paying the money and receiving a conveyance. He was urgent for them to do so; informed them he had an opportunity to sell the lot, but disliked to do so while his obligation to them was outstanding. They disregarded his urgent solicitations to close the matter, and failed even to reply to his letters. He continued the suit until in 1867, nearly seven years, endeavoring to get the matter closed up, either by canceling the contract, or by having them to fulfill it and receive a deed.

He was not bound to relinquish his claim for the purchase money, even under the agreement to cancel the purchase, until his obligation to convey was returned. He was not

required to run the risk of having to perform the agreement, notwithstanding the verbal agreement to abandon the sale. Had he filed a bill to have the agreement surrendered up, they could have replied that the contract to cancel was verbal and within the statute of frauds, and unexecuted; or, had they filed their bill for a specific performance, and Osgood had set up the agreement to cancel, they could have urged that it was verbal, unexecuted, and void under the statute of frauds. It then follows, that by refusing to surrender the contract they kept it alive, and refusing to release him from his obligation to convey, they continued their own liability.

If it be urged that he could have declared a forfeiture, and thus have terminated his liability, still he was under no obligation to do so. He had offered to carry out the arrangement to rescind, he placed it upon the ground only that he was willing to perform his agreement, but in every instance distinctly stated he preferred to go on with the agreement. He said or did nothing to indicate that he desired or intended to declare a forfeiture. It was at appellants' solicitation he entered into the agreement to cancel, and it is their own fault if it was not carried out and they released. It then follows there was no ground for an injunction, and it was properly dissolved, and the relief refused under their bill. Again, appellants had ample opportunity to interpose the defense that the sale had been rescinded, in the suit at law, had it been true. Having this opportunity, and failing to interpose the defense in a suit at law, they must be held to have waived it.

It is a firmly established rule, that a party failing to make a defense at law, shall not be permitted to come into equity and have such a defense allowed, unless he can show he was prevented by accident, mistake or fraud. None of these grounds was shown to have existed in this case; on the contrary, appellants knew the suit was pending, and Osgood urged them to close the matter. They had known for years that the suit had not been dismissed, and that Osgood could at any time take judgment for the want of a plea, and still they made no

defense. The defense was complete at law, and they failed to make it in that suit, and are estopped from seeking relief in equity.

Was Osgood entitled to maintain his cross bill? He had already obtained a judgment for the second and third installments on the purchase of the lot. He showed no grounds in equity for converting the judgment into a decree. The mere fact that he held the judgment, did not confer jurisdiction upon the court of equity; nor did the fact that it was recovered as part of the purchase money for the lot. And if it be urged that the fourth installment was unpaid, still his remedy was complete at law. But even if equity could have entertained jurisdiction, still the payment of the money last due, and the conveyance, were simultaneous and concurrent acts under the agreement. Appellants were not bound to pay until he conveyed, or offered to convey. *Tyler* v. *Young*, 2 Scam. 444; *Scott* v. *Shepherd*, 3 Gilm. 483; *Brown* v. *Cannon*, 5 Gilm. 174. Osgood could not have recovered at law for this last installment without tendering a deed, as both that payment and the execution of the deed were acts to be done at the same time; and there is no pretense he ever delivered them, or offered to deliver them, a deed, nor does it even appear he had title that would have enabled him to convey. There was, therefore, no ground for entertaining the cross bill, and the court should have refused the relief and dismissed the cross bill.

The court below allowed an attorney's fee of $250 in having the injunction dissolved. This seems to be a large sum for entering and trying a mere motion to dissolve the injunction. From the evidence in the record, it would seem that the fee was for trying the whole case. The design of the statute is not that the defendant shall, where the injunction is dissolved, recover his attorney's fees for all that has been, or may be, done in the case. To give the statute such an unreasonable construction, would render it an instrument of great oppression. It was only intended to reimburse the defendant for moneys

which he has paid, or for which he has become liable, on the motion to dissolve.

Again, the attorneys in this case only gave it as their opinion that the fee they name would be reasonable. Such proof is not proper and sufficient upon which to base the decree. It should be, What has the defendant paid, or become liable to pay, and is it the usual and customary fee paid for such services? It would not be proper to allow an extravagant fee, in view of the service, and that it might be collected of the plaintiff, or a conditional fee for a certain sum in any event, and an additional sum in case of a dissolution. It is the duty of the chancellor to refuse to allow exorbitant and oppressive charges. It is not proper, that the danger of being greatly oppressed by such damages in case of a failure to maintain an injunction, should be such as to deter men from seeking their rights by employing the necessary process of the court. The danger of oppression should not be so great as to obstruct justice, and to license the vicious to perpetrate acts of oppression with impunity. But a reasonable and fair compensation should be allowed to defendant for money actually paid to an attorney, or a liability fairly and honestly incurred to pay an attorney to procure the dissolution—such a fee only as he would pay if he had no hope of having it reimbursed.

In this case, we infer that Osgood recovered for the litigation on his cross bill, which was not necessarily connected with the injunction; also on the original bill, which was tried subsequently to the hearing on the motion to dissolve. And in addition to all of this, Osgood seems not to have paid, or become liable for, a single dollar for attorneys' fees. He seems to have attended to his own case. We do not believe the law intends that an attorney may claim of the opposite party a fee for attending to his own suit, much less one that seems to us to be exorbitant.

For the errors indicated, the decree of the court below is reversed and the cause remanded.

*Decree reversed.*