# JACOB DARST

## *v.*

# JACOB GALE *et al.*

1. AGENCY—*ratification equivalent to authority.*  Where the secretary of an insurance company, without any express authority, pledges bonds of the company, secured by deed of trust, for an indebtedness and for future advances, but with the knowledge and subsequent acquiescence of the directors, this will be equivalent to a prior authority, and the act will be binding, in the absence of proof of fraud.

2. CORPORATION—*who may question its act.*  The purchaser of real estate of a private corporation, at a judicial sale, who is neither a stockholder nor creditor, can not question the power of the corporation to make a prior deed of trust upon the same property, and have the same set aside in his favor, when he purchases with notice of such incumbrance, and the owner of the prior indebtedness has been guilty of no fraud.

3. SAME—*ultra vires.*  It is the general rule, that the plea of *ultra vires* shall not prevail where, instead of advancing justice, it will accomplish a

wrong. Where a corporation receives money upon the faith of its act, and uses the same, and the contract has been fully performed, it, or one succeeding to its rights, can not plead a want of authority to do the act by which the money is obtained.

4. DEED OF TRUST—*whether paid, or standing security.* The parties to notes secured by deed of trust have the right, in their mutual dealings, to treat them as unpaid, and as standing as security for future advances, and they will be good for such advances as between the parties and all others not prejudiced thereby.

5. ACKNOWLEDGMENT. The acknowledgment of a deed of trust, taken by one of the trustees, is void as to such trustee, but if the execution of the deed is proved, this will cure the defect.

6. INJUNCTION—*assessing damages on dissolution.* The statute authorizes the assessment of damages by the court, upon the dissolution of an injunction, in *all* cases, as well where the injunction is but part of or incident to the principal relief sought, as where it is the sole object of the bill, and whether the injunction is dissolved on interlocutory decree or on final hearing.

7. MEASURE OF DAMAGES—*dissolution of injunction.* On the assessment of damages, upon dissolution of an injunction, it is proper to allow all proper expenses incurred in consequence of the injunction, including attorneys' fees.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

Mr. JULIUS S. STARR, and Messrs. PUTERBAUGH, LEE & QUINN, for the plaintiff in error.

Messrs. HOPKINS & MORROW, and Mr. D. McCULLOCH, for the defendants in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Bill was filed in the court below by Jacob Darst, against Jacob Gale, Sidney Pulsifer and Erastus D. Hardin, to enjoin them from selling certain real estate in Peoria by virtue of a deed of trust executed by the Peoria Marine and Fire Insurance Company, on the 1st of October, 1859, to Jacob Gale, Sidney Pulsifer and Henry Grove, as trustees, to secure the payment of ten bonds for the sum of $1000 each, with coupons for interest at the rate of ten per cent per annum attached,

and to declare said deed void and vacate the same as a cloud upon the title of Darst.

Answers were filed by Pulsifer and Hardin, and they also filed their cross-bill against Darst, and William M. Dodge, receiver of the Peoria Marine and Fire Insurance Company, to enjoin Darst from taking possession of the premises, to correct mistake of description of the property in the deed of trust, and to appoint a receiver. Answer was filed to the cross-bill, and replications were also filed to the answers to the original bill and cross-bill; and the cause was heard on bill, answers, cross-bill and answer and proofs, and the court thereupon decreed that the bill be dismissed, and that the relief prayed by the cross-bill be granted. The record is brought here by the appeal of Darst.

The first point made, in argument for the reversal of the decree below, is, that the deed of trust was void, because its execution was beyond the power vested, either expressly or by necessary implication, in the insurance company.

The bonds were issued by virtue of a resolution of the board of directors, adopted on the 3d of October, 1859, made payable to Charles Holland, secretary of the company, and placed in his hands to negotiate "in the East," for the purpose of raising money to meet indebtedness of the company maturing in the then following December. The deed of trust was executed and placed on record when the bonds were issued. Holland failed to negotiate the bonds "in the East," but, sometime afterwards, pledged eight of them to John Johnson as collateral security for indebtedness by the company to him, in place of other collateral security which it was desired to take up. In 1861, Holland negotiated with S. Pulsifer & Co. to pay the company's indebtedness to Johnson, then amounting to $6250, and deposited the eight bonds, that had been pledged with Johnson, as collateral security for that and any other indebtedness the company then or thereafter might owe them. In September, 1863, Holland negotiated another loan from S. Pulsifer & Co. of $7000 for the insurance company, and deposited with them, as collateral security, the other two

bonds, together with other collaterals. From that time forth, the ten bonds were held by S. Pulsifer & Co. as collateral security for any and all indebtedness contracted or thereafter to be contracted by the insurance company to them. The insurance company made deposits with S. Pulsifer & Co., drew drafts on them, and had them discount notes for it, from time to time, as its regular bankers. At one time (in 1865) the company had liquidated its entire indebtedness to them, but it suffered the bonds to remain there as before, and continued to make deposits with them, draw drafts on them and have them make discounts for it, until in 1869, when it was put into liquidation. At that time, the company was indebted to S. Pulsifer & Co., on over-drafts, $13,911.10. and for notes discounted, etc., $17,500, for which they held as security the ten bonds and the deed of trust, thirteen bonds, of $1000 each, on Lacon City, and seven Marshall county bonds, of $1000 each.

It is clear to our minds, from the evidence, that the ten bonds were in the hands of S. Pulsifer & Co. as security for advances made for the insurance company, from time to time, with the knowledge and acquiescence of the board of directors of the company, although it does not appear that they ever, by a formal resolution entered upon their records, authorized them to be thus pledged. The company had the benefit of the security, obtained the money upon its faith, and it is not shown that there was any fraud on the part of S. Pulsifer & Co. in their transactions with the insurance company.

The insurance company, as a corporate body, was empowered, by its charter, to insure property, etc. It was authorized to invest its capital in certain securities, and to purchase and hold, for its business, real estate, the purchase money for which should not exceed, in the whole, $20,000; and it was also authorized to take and hold any real estate mortgaged or pledged to it to secure the payment of any debt; to purchase on sales made by virtue of any judgment at law, or any decree of a court of equity, or otherwise to take and receive any real estate in payment or toward satisfaction of any debt previously con-

140 ·        DARST *v.* GALE *et al.*        [Sept. T.

Opinion of the Court.

tracted, and further, to lease and convey said real estate, or any part thereof.

Whether it was, in fact, necessary for the insurance company to mortgage its real estate acquired and used (as the property here in question was) for the transaction of its business, in order to meet its liabilities to its creditors, we think unimportant. That, in certain cases, it might have lawfully done so, even against the remonstrance of those who had the right to directly interfere in its management, we think can admit of but little controversy. Such a case, it may be conceded, is not shown by the evidence in this record; and it may be, had the application been made by a creditor or stockholder in apt time to have enjoined the disposition that has been made of these bonds, it would, on the evidence before us, have been required to grant the injunction. The question here, however, is entirely different. Appellant has no interest whatever in the assets of the insurance company. He claims neither as stockholder nor as creditor of it. He is, at most, simply the purchaser of a purchaser of property that belonged to it, at a judicial sale, with full, actual knowledge, both in himself and his vendor, of the prior claim of the trust deed, and of the amount claimed by Pulsifer & Co. to be due thereon by virtue of it. He can, therefore, have only what the company had, at the time, the right to sell, and, as to the trust deed, can interpose no other defenses than might have been interposed by the company, had the property not been sold. The general rule is, that the plea of *ultra vires* shall not prevail when, instead of advancing justice, it would accomplish a wrong; and it makes no difference, in this respect, whether it is interposed for or against a corporation. The corporation here had the money of Pulsifer & Co. upon the faith of this security. The amount went to swell its assets, and it would be against natural justice that it should now be sufficient to say: true, the company had the benefit of the money—it went to enlarge its capital, and thereby the amount with which its debts were to be paid, and, if it should prove solvent, the amount of the distributive shares of its stockholders; but the company had no authority, under its

charter, to obtain the money, and therefore it is not responsible for it.

The doctrine seems to be settled by the weight of modern decisions, that a private corporation can not avail of the defense of *ultra vires* where the contract has been, in good faith, fully performed by the other party, and the corporation has had the benefit of the contract and the performance. *Ex parte Chippendale,* 4 D. G. M. & G. 19; *Whitney Arms Co.* v. *Barlow et al.* 63 N. Y. 62.

This question was well considered by this court in *Bradley* v. *Ballard,* 55 Ill. 413, where bill in chancery was filed by a stockholder of a private corporation to enjoin the prosecution of a suit on a promissory note claimed to have been issued by it without authority of law. It was said: "It is said by counsel for complainant that a corporation is not estopped to say, in its defense, that it had not the power to make a contract sought to be enforced against it, for the reason that, if thus estopped, its powers might be indefinitely enlarged. While the contract remains unexecuted on both sides, this is undoubtedly true, but when, under cover of this principle, a corporation seeks to evade the payment of borrowed money, on the ground that, although it had power to borrow money, it expended the money borrowed in prosecuting a business which it was not authorized to prosecute, it is pressing the doctrine of *ultra vires* to an extent that can never be tolerated, even though the lender of the money knew that the corporation was transacting a business beyond its chartered powers, and that his money would be used in such business, provided the business itself was free from any intrinsic immorality or illegality.

"Neither is it correct to say that the application to corporations of the doctrine of equitable estoppel, where justice requires it to be applied, as, when, under a claim of corporate power, they have received benefits for which they refuse to pay, from a sudden discovery that they had not the powers they claimed, can be made the means of enabling them indefinitely to extend their powers. If that were true it would be

an insuperable objection to the application of the doctrine, even for the purpose of preventing injustice in individual cases. But it is not true. This doctrine is applied only for the purpose of compelling corporations to be honest, in the simplest and commonest sense of honesty, and after whatever mischief may belong to the performance of an act *ultra vires* has been accomplished." And again: "While courts are inclined to maintain, with rigor, the limitation of corporate action, whenever it is a question of restraining the corporation in advance from passing beyond the boundaries of their charters, they are equally inclined, on the other hand, to enforce against them contracts, through *ultra vires*, of which they have received the benefit."

But it is again insisted, that even if it was competent for the corporation to issue the bonds and execute the deed of trust, in the first instance, the bonds were not pledged to Pulsifer & Co. by those having proper authority, to that end, from the corporation. As we have previously said, we are satisfied, from the evidence, that the directors of the corporation knew that the bonds were so pledged, and acquiesced therein. The principle, that a subsequent ratification is equivalent to a prior authority, is applicable, and conclusive of the question. Angell & Ames on Corp. § 304; Story on Agency, § 239, *et seq.*

The claim made, that the bonds were paid and the deed of trust thereby discharged, is not tenable. Neither Pulsifer & Co. nor the corporation ever treated the bonds as paid; on the contrary, they both treated them as unpaid and as a standing security for future advances. The parties had the unquestioned right to treat the notes and deed of trust in this light, and having done so, it does not lie in the mouth of one in nowise prejudiced thereby to complain.

The fact that Pulsifer was, for a time, one of the directors of the corporation, in the absence of evidence showing bad faith in his transactions with the company, is of no moment. He might, acting in good faith and fairly, as lawfully advance money to the corporation upon the faith of its securities as

any one else. *Ch. Building Society* v. *Crowell*, 65 Ill. 453. Objection is urged that the deed of trust was not properly acknowledged. The trustees named were empowered to act separately, and in the alternative—that is to say, if, by circumstances, one became disqualified or was unable to act—another might act. The acknowledgment was taken by Grove, one of the parties named as trustees. This, unquestionably, rendered the deed void as to him; but we fail to comprehend how it adversely affected the deed as to the other trustees. He and they had no community of interest, and his becoming disqualified had no tendency to disqualify them.

But, aside from this, since the execution of the deed of trust is proved, *aliunde* the acknowledgment, and the trustees had no beneficial interest in the trust, we are of opinion that the proof of execution was sufficient, without regard to the sufficiency of the acknowledgment, so far as relates to the purposes of the case before us.

Appellant suffers no hardship by being held to be a purchaser subject to the deed of trust. It is shown by the evidence, that Dodge, as receiver of the insurance company, advertised the property for sale, on Monday, December 6, 1869, at 2 o'clock P. M. Gale, as trustee under the deed of trust, advertised the property for sale, on the same day, at 10 o'clock A. M. Appellant proposed to Dodge that if he would have his sale come off before that on the deed of trust, he would bid $1000 on the property. Dodge then applied for and obtained leave of the court to sell on a shorter notice than that provided by its former decree. He then advertised the property to be sold on Saturday, the 4th day of December, 1869, and, in accordance therewith, sold it at that time. Appellant, however, failed to appear and make any bid on the property; but Comstock, who had formerly owned the property and conveyed it to the insurance company, bid $100; and, being the only bidder, it was struck off and conveyed to him for that amount. On the same day he conveyed it to appellant for the consideration, expressed in the deed, of $500; and on the following Monday morning appellant filed his bill.

These circumstances, in connection with that before alluded to, that Comstock and appellant both had actual notice of the deed of trust, and of the claim made thereunder by S. Pulsifer & Co., before their purchases, and in view of the very great inadequacy of the price paid, when compared with the actual value of the property, tend to show an improper conspiracy between Comstock and appellant, and that the position of appellant is that of an adventurer, voluntarily assuming the risk of defeating the trust deed. His purchase was at a price which assumed the validity of that deed, and yet, if it proved invalid, the benefit resulting would go to him, and not to creditors or stockholders of the corporation.

We have, perhaps, omitted to notice, in their order, some minor objections; but, if so, it is because we deem them either immaterial or untenable.

The only remaining objection to be noticed relates to the amount of damages decreed against appellant, as a consequence of dissolving the injunction. After hearing evidence upon the suggestions of damages filed, the court awarded $500. It is insisted, first, that such damages can only be awarded where a motion is made to dissolve the injunction, or, on final hearing, when the only relief sought is by injunction; and second, that the amount awarded is excessive.

The statute of February 21, 1861, under which the award was made, is not so limited. It provides "in all cases where an injunction is dissolved by any court of chancery in this State, the court, after dissolving the injunction and before finally disposing of the suit, upon the party claiming damages by reason of such injunction, suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may require, and to equity appertain, to the party damnified by such injunction, and may award execution to collect the same." Gross' Stat. 1869, p. 459, § 12. This clearly covers *all* cases, as well where the injunction is but part of or incident to the principal relief sought, as where it is the sole object of the bill; and the damages to be assessed after the dissolution of the injunction and before

finally disposing of the suit, are such as have been sustained, without regard to whether the injunction was dissolved by an interlocutory order on motion for that purpose, or on final hearing.

It is true, as was held in *Jevne* v. *Osgood et al.* 57 Ill. 340, the proof should be confined to expenses incurred in consequence of the injunction, and it would be improper to include attorney's fees for services rendered about a branch of the case independent of the injunction; but where injunction is part of the relief sought, it is within the letter and spirit of the statute that expenses, properly incurred on account of the injunction, may be assessed on its dissolution.

Here, injunction was an important part of the relief sought by appellant's bill, and it was proper for the court, under the evidence, to make such an assessment of damages on that account as was equitable.

We think the amount assessed is fairly authorized by the evidence. The taking of evidence occupied many days, and the trial alone consumed nearly two weeks. It was reasonably necessary that several attorneys should be employed, and the value of their services is shown. The evidence shows, with reasonable approximation, what expenses were rendered in consequence of the injunction, disconnecting that from the other branches of the case, and the decree thereon is warranted.

*Decree affirmed.*

Mr. JUSTICE BREESE: I do not concur on the question of damages. I think a rule has been adopted at variance with previous decisions of this court on this point.