**Jarvis R. Burrows et al., Appellants, v. Mary C. Merrifield et al., Appellees.**

**Gen. No. 4,990.**

1. RECEIVERSHIPS—*taxation of costs upon dismissal of bill.* Upon dismissal of a bill at the instance of complainant upon which a receiver has been appointed, the costs of the receivership should be taxed against such complainant, unless the allegations of the bill which justified the appointment had been sustained and unless the allegations of the answer which denied the allegations of the bill have been refuted.

2. RECEIVERSHIPS—*when taxation of costs reversed.* In order that the court may properly award receiver's fees and allow for attorney's fees incurred by the receiver, evidence should be heard; and in order that the allowances made may be sustained when attacked on review the evidence so heard must be preserved by certificate of evidence or else appropriate recitals should be contained in the decree.

Bill in equity. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1909. Affirmed in part, reversed in part and remanded. Opinion filed March 24, 1909. Rehearing denied June 10, 1909.

**Statement by the Court.** On May 28, 1907, Jarvis R. Burrows and Thomas W. Burrows, appellants, filed a bill in equity against Mary C. Merrifield, Louis W.

Merrifield, Lilla M. Wood, George R. Wood, and the
Western Cottage Piano and Organ Company, appel-
lees, to the June term of the Circuit Court of LaSalle
county. The bill alleges in substance that the defend-
ant, the Western Cottage Piano and Organ Company,
which will hereafter be termed "the company," is an
Illinois corporation with a capital stock of $100,000
divided into shares of the par value of $100 each; that
the complainants own one-half of the capital stock
and the defendants, Merrifields and Woods, own the
other half; that at the time of filing of the bill the
board of directors was composed of five persons; that
the complainants were represented on the board by
themselves and the defendants by the two Merrifields
and George R. Wood. The bill alleges that the com-
plainants have endeavored to change the by-laws so
that they would have an equal voice in the affairs of
the company. There are allegations that Louis W.
Merrifield negotiated certain notes of the company,
endorsed by Thomas W. Burrows and L. W. Merri-
field, and that L. W. Merrifield had received the pro-
ceeds of the notes and had used the proceeds and a
check of the company for $10,912.52 to pay a claim of
$30,606.25 allowed in favor of one Lucy D. Merrifield
against the estate of L. B. Merrifield, deceased. It
is also alleged that the Merrifields had attempted to
make George R. Wood superintendent of the company
at an annual salary of $2500; that the Merrifields had
appropriated certain described property belonging to
the company; that the company is doing a large busi-
ness and has contracts unfulfilled to the amount of
$125,000, and has a bi-weekly pay roll of $3,000; that
the men have not been paid for three weeks and there
are current bills unpaid to the amount of $30,000; that
the Merrifield family with their directors are fraudu-
lently managing and directing the affairs of the com-
pany for their own benefit and refuse to permit any
change in the officers or directors of the company that
will permit complainants to have any voice in its af-

fairs; that Mary C. Merrifield has brought an action at law in the Circuit Court of LaSalle county against Thomas W. Burrows, L. W. Merrifield and the company on certain notes amounting to $20,000 which she pretends to have purchased, and that she ought not to be permitted to prosecute said suit and that George R. Wood should be enjoined from receiving the salary voted to him. The bill prays that the defendants be required to make discovery as to certain facts concerning the notes sued on by Mary C. Merrifield and for an accounting; that the resolution employing George R. Wood be declared void; that Mary C. Merrifield be enjoined from further prosecuting her suit and that some suitable person be appointed receiver to continue the business of the company.

A notice was served on the defendants of an application for the appointment of a receiver. On May 29th the Ottawa Banking and Trust Company was appointed receiver. On the 24th of June the defendants filed a joint and several answer to the bill. The answer sets up various purchases and transfers by which the complainants had become the owners of one-half of the stock of the company; that Thomas W. Burrows is the administrator of L. B. Merrifield, deceased; denies that a claim was allowed in favor of Lucy D. Merrifield for $30,606.25 but states that a claim was allowed in favor of A. H. Merrifield, and that the claim was based upon a note given by Thomas W. Burrows to A. H. Merrifield for the purchase of certain stock in the company from A. H. Merrifield, which note was endorsed by Leonard B. Merrifield, and that the said indebtedness was the indebtedness of Thomas W. Burrows. The answer states what the defendants allege to be facts concerning the notes upon which Mary C. Merrifield has brought suit at law. It states that Thomas W. Burrows as vice president of the company, and not Louis W. Merrifield, drew the check for $10,912.52, of which complaint is made in the bill, and that said Thomas W. Burrows applied the same in

payment of the claim of $30,606.25 allowed against the estate of L. B. Merrifield, thereby paying his own personal indebtedness; states that Louis W. Merrifield is the president of the company, that Thomas W. Burrows is the vice president and treasurer and that Jarvis R. Burrows is the secretary; that the by-laws of the company provide that the treasurer shall have the care and custody of all moneys and credits, and that the secretary shall have charge of all books and papers and shall countersign all notes and contracts requiring the signature of the company. The answer further states that the Merrifields and Woods are the absolute owners of one-half of the stock of the company, and that Mary C. Merrifield has possession of the certificates of the other half of the stock pledged to her to secure an indebtedness to her from the complainants; denies all fraud and underhanded dealings of the defendants, and denies the use of any funds of the corporation for the use and benefit of any of the defendants. The answer admits there was a pay roll of $2000 past due, and states arrangements were made to secure the money to meet that pay roll; denies that Jarvis R. Burrows was requested personally to endorse the note, and states that Jarvis R. Burrows was requested to countersign the same as secretary, but that he peremptorily refused to do so. The answer makes various charges against the complainants, among others that Thomas W. Burrows and Jarvis R. Burrows took from the vaults of the company a promissory note for $30,045, which the complainants had executed and delivered to the company, and that they refuse to return said note, and that Jarvis R. Burrows as secretary had directed the bookkeeper to make certain entries concerning that note for the purpose of defrauding the company, and that the complainants were owing the company more than $3000 for interest past due on said note. The answer alleges that before the complainants became stockholders the business was very prosperous; that since the Burrows have be-

come stockholders and directors, in March, 1903, a dividend of fifty per cent was declared and that in December, 1903, a further dividend of twenty per cent was declared; that these dividends were declared and paid from profits accumulated before the complainants became stockholders, and that a further dividend of ten per cent was declared in 1906; asserts that the assets of the company are now more than three times the amount of its indebtedness, and there is no valid reason for the appointment of a receiver; that if the complainants will pay the company what they owe it, the company will have plenty of money to meet its pay roll; that the defendant directors have at all times been willing that the proper officers should have and they have authority to borrow money to pay its indebtedness and to pledge what assets are necessary, but the complainants refuse to concur in such course; states that complainants are conspiring together to obtain exclusive control of the business and to force the other stockholders to sell to them their stock at less than its actual value; that in April, 1907, the defendants offered to complainants to give or take for the stock of the respective parties $225 per share; that the defendants offered to buy out complainants' stock or the defendants would sell to complainants on that basis. That later, Mary C. Merrifield offered to complainants to buy or sell on the basis of $215 per share, but the complainants refused to either buy or sell on that basis; the defendants deny that it was impossible to continue the business with its present board of directors, provided the complainants would act fairly and honestly and not for their own personal gain, and states that the complainants are the only persons who refuse to recognize the lawful authority of the company; and deny all fraud or conspiracy, etc. The bill was duly sworn to, and waived the oath to the answer. The answer was not sworn to.

The record does not show that any replication was filed to the answer. The complainants took no action

in the further prosecution of the cause after the filing of the answer, but on July 15th on motion of the defendants, the case was referred to the master to take the proofs. On July 31st the complainants gave notice that on August 2nd they would apply for leave to amend the bill. The record does not show that a motion was ever made pursuant to this notice. On October 7th—at the June term of court, the term to which the bill was returnable—the complainants made a motion to dismiss the bill without prejudice, and in support of this motion filed an affidavit made by themselves, with a letter attached from Sears, Roebuck & Company.

On the second of November, at the October term, the receiver filed a petition for compensation. On the fifth of November the court made an order allowing $2026.66 to the general manager employed by the receiver while it was in charge of the business, and $1000 to the receiver as compensation for the services of the receiver. Subsequently to the making of the order for compensation to the receiver, the receiver filed a report, on the 18th day of November in which it listed amongst the liabilities incurred by the receiver, $200 attorney's fees. On November 18th the defendants entered a motion that the allowance to the receiver of $1000 and its solicitor's fees be taxed as costs against complainants. There was an order that the hearing on this motion be postponed to November 26th and ordering that $200 be paid by the receiver from the moneys on hand in full of attorney's fees, and that the liabilities incurred by the receiver, including the receiver's compensation and superintendent's charges remaining unpaid, be a first lien upon the assets of the company, and that the same be paid by the company from cash on hand and from moneys received by it from bills etc. The motion to tax the receiver's compensation and attorney's fees to complainants was not disposed of at the October term. On the 13th of January, 1908, at the January term the complainants again moved for leave to dismiss their bill without preju-

dice. The motion of November 18th was heard on February 1st and on the 18th of February the court ordered that the receiver's compensation of $1000 and its solicitor's fees be taxed as costs against the complainants. From this order the complainants appeal to this court and assign for error (1) that the court erred in sustaining the motion to tax the allowance of receiver's compensation and solicitor's fees to the complainants, and (2) that there was error in the allowance of the receiver's compensation and the solicitor's fees in that there is neither any evidence preserved in the record upon which to base the allowance nor is there any finding of facts in the decree.

EDDY, HALEY & WETTEN and BUTTERS, ARMSTRONG & FERGUSON, for appellants.

WIDMER & WIDMER and McDOUGALL & CHAPMAN, for appellees.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

A motion has been made by the appellants to strike out certain parts of the statement of facts and argument from the brief and argument filed on behalf of appellees, for the reason that they are based upon the unsworn answer of defendants. What is said in said brief and argument is based upon the record.

It is contended by appellants that the receiver was appointed without objection, and that such appointment was for the mutual benefit of all parties concerned and for that reason the receiver's fees should be paid out of the common property—the property of the corporation.

"The amount of the receiver's compensation is generally held to be a part of the costs in a cause, and falls within the meaning of the term 'costs' which are awarded to the prevailing party." McAnrow v. Martin, 183 Ill. 467. Where a receivership is procured under the assertion of an unjust and wrongful claim,

and the receiver takes possession of the property, the court can protect the injured party by returning the property he was divested of without its being diminished to pay the receiver's charges.   Highley v. Deane, 168 Ill. 266; Leigh v. National Hollow Brake Beam Co., 224 Ill. 76.   ''The question of the distribution of the costs in a chancery proceeding is largely a matter of discretion with the trial court, and a court of review will not interfere unless such discretion has been abused.''   Leigh v. National Hollow Brake Beam Co., *supra;* Askew v. Springer, 111 Ill. 662.

The evidence heard on the motion to tax the costs to complainants shows that the defendants did not consent to the appointment of a receiver, but objected to the appointing of a receiver, and when it was apparent a receiver was to be appointed by the court the defendants then took part in the selection of the party to be the receiver.   This was apparently for the purpose of avoiding, as far as possible, damage that might result to them from the appointment of a receiver.   The allegations in the bill if true were sufficient to procure the appointment of a receiver.   The answer filed denied all the fraudulent charges in the bill and makes counter charges of a very serious nature against the complainants.

Complainants took no further action towards the prosecution of the suit after the answer was filed; three weeks thereafter on motion of the defendants the cause was referred to the master to take the proofs of the respective parties.   Thereafter the complainants gave notice that they would move to amend their bill, but never took any action on that motion.   If the statements of the answer are true, then the only cause for the company not having money to pay its employes was the failure of the complainants to pay interest upon a note they owed to the company, or the refusal of Jarvis R. Burrows, who was the secretary of the company, to countersign a note for a loan to the corporation for which arrangements had been made.

The company had ample assets to conduct its business and pay all its financial obligations. The company had declared and paid very large dividends on its capital stock under the same management it had at the time the receiver was appointed and had large assets, and was apparently doing a prosperous business. Its resources on May 29, 1907, were $223,248.42, while its liabilities, not including its liability on its capital stock, only amounted to $66,056.87.

There were but six stockholders in the corporation, five of whom were directors. The two Burrows who owned one-half of the stock were directors, while the other half interest was represented by the two Merrifields and George R. Wood. Complainants allege in the bill that they were insisting that the number of directors should be increased so that their stock might be represented by three directors, although the only stockholder who was not a director is a defendant.

At the term of court at which the suit was returnable complainants moved to dismiss the bill without prejudice, and in an affidavit in support of the motion say it is for the best interests of all the parties that the suit be dismissed. No change is shown in the conditions that existed when the bill was filed. A letter attached to the affidavit of complainants in support of the motion shows that because of the receivership, business relations of the company long established were about to be lost, or in other words that the appointment of the receiver was a mistake. The evidence heard on the motion to tax the receiver's compensation to the complainants shows that the refusal of the secretary to countersign the note, as such secretary, was one reason why money was not raised to meet the pay roll. The affidavit of one of the complainants states that the business which was about to be lost through the appointment of the receiver amounted to about $100,000 per year. The complainants voluntarily dismissed their bill without prejudice, thereby reserving the right to renew the controversy should

they see fit to do so. Such a dismissal should be at the complainants' costs. Langois v. Matthiessen, 155 Ill. 230. To tax the costs against the property of the company, it was necessary that the material allegations of the bill should be sustained by proof after the answer had been filed. The trial court in the exercise of its discretion taxed the compensation of the receiver and the attorney's fees of the receiver's attorney to the complainants. We see no abuse of discretion in the order, and hold that such taxation was proper, and we affirm that part of the order.

It is argued that the court should have heard evidence on the value of the receiver's services and attorney's fees, and the evidence should have been preserved by a certificate of evidence; or there should be a finding of facts from the evidence in the decree. The record shows that the Ottawa Banking and Trust Company acted as receiver for the company from May 29, 1907, to November 18th of the same year and was responsible for the conduct of this company's extensive business, which had a pay roll of over $1000 per week and resources amounting to $223,248.42 when the receiver was appointed. The rule is firmly established that the facts upon which decrees in chancery are based must appear in the record, or the decree must recite the hearing of evidence and the facts found from the evidence. There is no evidence in the record tending to show the reasonable value of either the receiver's compensation or that of its counsel. A court should not, without evidence showing what is proper compensation in a given case, determine and award the compensation to be paid to a receiver; if it fails to follow such rule, a reviewing court may, upon appeal, set such award aside. Heffron v. Rice, 40 Ill. App. 244. An allowance of a solicitor's fee cannot be sustained where no evidence showing what services the solicitor performed, or the value thereof, is preserved in the record. Metheny v. Bohn, 164 Ill. 495; McMullen v. Reynolds, 209 Ill. 504; Jevne v. Osgood,

57 Ill. 340; Hunter v. Hunter, 121 Ill. App. 380. While courts have a general knowledge of the value of such services, yet if they may fix such compensation without any evidence as to their reasonable value, such a practice might lead to grave irregularities. Because of the failure to preserve any evidence of the value of the services performed, either by a recital in the decree or by a certificate of evidence, that part of the decree fixing the amount of the receiver's compensation and its attorney's fees must be reversed and the cause remanded for a retrial on those questions. It does not appear that the defendants took any part in procuring the assessment of such compensation, and the receiver having been appointed on the motion of complainants, it was their duty to see that the amount of its compensation was properly assessed. One half of the costs of this appeal are taxed to the complainants and one-half to the company.

*Affirmed in part, reversed in part and remanded.*