## Walter Gibb, Appellant, v. Phoebe A. Dominy et al., Appellees.

### Gen. No. 5303.

1. GAMBLING—*section 132 of Criminal Code construed.* If a depositor in a bank loses money in bucket shop gambling and pays his losses by checks on such bank, even though such bank knows of the purpose for which such checks are drawn it may pay the same without incurring liability to such depositor under section 132 of the Criminal Code, as such bank is not a "winner" within the meaning of such section.

2. GAMBLING—*within what time action must be brought by loser under section 132 of the Criminal Code.* By virtue of this statute a loser must bring his action within six months from the loss and failing within such time to commence the same, he is thereafter forever barred.

3. INJUNCTIONS—*what essential to sustain assessment of damages upon dissolution.* A certificate of evidence showing the evidence upon which the assessment of damages upon dissolution was predicated or else a finding of facts is essential in order to sustain such an assessment.

Bill in equity. Appeal from the Circuit Court of Livingston county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in

this court at the October term, 1909. Affirmed in part and reversed in part and remanded. Opinion filed March 11, 1910.      .

R. S. McIlduff and B. R. Thompson, for appellant.

C. F. H. Carrithers, for appellees.

Mr. Presiding Justice Dibell delivered the opinion of the court.

Walter Gibb, the appellant, filed a bill in equity wherein he alleged that he was a saloonkeeper; that he carried a bank account with the banking house of L. B. Dominy & Company; that Thomas R. Voorhees, Emil Keller, Nathan B. Camp and Joseph C. Kessler were respectively keepers of bucket shops, wherein gambling transactions in grain and provisions, bonds and stocks, were carried on; that from about September —, 1903, to July 6, 1907, appellant conducted various gambling transactions in grain, etc., through said several gambling houses; that he sometimes won and then deposited his winnings in said bank, and at other times he suffered loss and from time to time drew checks against his account in said bank for the amount of said respective losses, payable to the particular operator to whom he had lost, and that the drawing of such checks from time to time continued up to and including July 6, 1907; that each of said checks was paid by the bank upon presentation; and that on July 12, 1907, appellant had overdrawn his account in said bank in the sum of $1,750 and he executed on that date his judgment note to the bank for that sum, due on or before six months after date with interest at seven per cent per annum. The bill set out the amount of each of the winnings deposited in the bank and the date of its deposit. It also gave the date and amount and payee of each check on said bank given in a gambling transaction. It alleged that some one or two of the members of said banking firm of L. B. Dominy & Company, which was a partnership composed of five

persons, knew that appellant was engaged in gambling in grain, etc., through those several bucket shops, and knew at the time each of those checks was paid that it was given to settle a loss in a gambling transaction; that it was illegal for said bank to pay said checks with knowledge that they were given to settle losses in gambling transactions; that if said checks had not been charged up to his account, his account would not have been overdrawn in the sum of $1,750 or any other sum on July 12, 1907.

The bill further alleged that frequently during the time appellant was engaged in said gambling transactions, members of said banking firm urged him to stop the practice of gambling in grain, and told him that he was sure to lose in the end, and that when he gave said note the member of said banking firm who procured the note from him (which was while he was taking the Keeley cure at Dwight), told him that the firm would pay no more checks drawn by him on said bank for margins or to pay losses on option deals. The bill implies that he drew no more such checks on said bank, but he did keep a deposit account thereafter in the bank, and from time to time the bank took therefrom various sums and endorsed the same as payments on said note. The bill charges that the note was illegal, and therefore it was illegal to take those sums out of the bank account. The bill further charged that on May 23, 1908, said banking firm recovered a judgment by confession against him on said note for $1,163.75 and costs, and sued out an execution and levied it upon certain real estate and also upon certain personal property, and advertised it for sale for October 24, 1908. The bill further alleged that by its course of taking various sums out of his bank account and endorsing the same upon said note, his bank account became overdrawn in the sum of $68.79, and the bank brought suit against him before a justice of the peace and recovered a judgment for that sum and

costs on June 25, 1908, and afterwards sued out an execution to a constable and the same was levied upon certain personal property, which the constable advertised for sale under said execution for October 24, 1908. It was charged that appellant did not owe this last sum, because those various sums had been withdrawn from his account to endorse the same upon this illegal note. This bill was filed on October 23, 1908, against said banking firm and each of said bucket shop keepers and the sheriff and the constable, and under it an injunction was obtained restraining the sales by the sheriff and the constable, and afterwards by order of court the personal property was restored to appellant. The bill sought an accounting with the banking firm and sought to have the checks given in gambling transactions (less the winnings so deposited), deducted from the debit side of appellant's account with the bank, and sought a decree that he was not indebted to the bank and to have the judgments set aside. For some reason not disclosed, appellant dismissed the bill as to Voorhees. The defendants filed a special demurrer to said bill, which was sustained, and filed a motion to dissolve the injunction, which was granted, and the court found that there was no equity in the bill, assessed appellee's damages at $123 for the wrongful suing out of the injunction, and dismissed the bill at the costs of appellant. This is an appeal by complainant below from that decree.

Section 132 of the Criminal Code authorizes any person who shall lose a sum of money or other valuable thing to any other person to sue and recover the money or other valuable thing so lost and paid or delivered by action at law or proceeding in chancery from the winner thereof, but if the person losing shall not within six months sue and with effect prosecute for such money or other thing by him lost and paid or delivered, it shall be lawful for any person to sue for and recover treble the value thereof, one-half to the use of the county and one-half to the person suing. In other

words, the loser may sue and recover from the winner and recover the money or value lost, and afterwards if the loser fails to sue, any other person may sue the winner and recover three times the money or value lost.

In our judgment, the bank was not the winner of what appellant lost. The winner was the keeper of the bucket shop with whom the transaction was conducted. When there was a loss and appellant drew his check therefor to the bucket shop keeper and the bucket shop keeper cashed it at the bank, then appellant has lost and the bucket shop keeper had won that amount of money, and a cause of action arose in favor of appellant against the bucket shop keeper to recover that sum. We think it would be a dangerous doctrine to hold that a banker is bound to consider the purpose for which a check is drawn by one of his depositors against his account in the bank, and to refuse to pay it if the banker should be of opinion that the depositor is thereby paying a gambling debt. The general rule in Illinois is that a banker is bound to accept and pay any genuine check drawn against the deposit of the maker of the check if there are funds sufficient to meet it (Munn v. Burch, 25 Ill. 21; Brown v. Schintz, 202 Ill. 509, 517), and the rule here sought to be established would revolutionize the banking business.

But if appellant is right in his position that the bank should not have paid his checks on those occasions when they were given to pay a loss on a deal in a bucket shop, still appellant's bill cannot be maintained. The loss by appellant was entirely complete when the check was paid. As already stated, the statute above referred to requires the suit to be begun by the loser within six months after the loss, and thereafter gives a right of action to any other person to recover treble the loss. It was held in Holland v. Swain, 94 Ill. 154, that the legal effect of the statute is to limit the time in which the loser may bring his action to six months, and to bar the bringing of such

action by the loser after the lapse of that time. This was again held in Kizer v. Walden, 198 Ill. 274, and the same rule was held in a suit relating to gambling in grain in Bartlett v. Slusher, 215 Ill. 348. The last check of the kind mentioned was drawn on July 6, 1907, and was paid shortly thereafter. This suit was begun against the bank to recover the amount of those checks one year, three months and seventeen days later. This was one of the grounds of special demurrer. The demurrer was properly sustained and the bill dismissed.

Appellees filed a suggestion of damages for solicitor's fees, and damages in the sum of $123 therefor were adjudged by the court, and execution was awarded therefor. There was no finding of facts to justify the allowance of any damages for solicitor's fees, nor was any certificate taken preserving the evidence. In the absence of a certificate of evidence authorizing the assessment or a finding of facts in the decree sufficient to support it, the assessment cannot stand. This has been held in many cases, of which Albright v. Smith, 68 Ill. 181, is an example. Burrows v. Merrifield, 148 Ill. App. 594; 243 Ill. 362. The allowance for solicitor's fees must therefore be reversed.

The decree is affirmed, so far as it dismissed the bill for want of equity. It is reversed and remanded as to the assessment of damages. Each party will pay its own costs in this court.

*Affirmed in part and reversed in part and remanded.*