## American Credit Indemnity Company of New York, Appellee, v. A. S. Yamer, Appellant.

### Gen. No. 16,860.

1. MUNICIPAL COURT—*"practice"* as used in act construed. Con-
struing the municipal court act in the light of its manifest purpose and
scope the term "practice" is to be regarded as general and as in-
cluding within it the term "pleadings."

2. MUNICIPAL COURT—*validity of rules changing pleadings in first class cases.* A rule of the municipal court which provides that the pleadings in cases of first class shall be like those prescribed for cases of the 4th class is valid.

3. ASSUMPSIT—*what not defense to action for money advanced.* If the money sued for was actually advanced by the corporation plaintiff, and retained by the defendant, the fact that it may have been loaned for the purpose of deceiving the public and the insurance departments of various states constitutes no defense.

4. CORPORATIONS—*when defense of ultra vires unavailing.* A party who has received a loan of money from a corporation and has had the benefit of such loan will not be permitted to interpose the defense that the loan was *ultra vires* the corporation in an action brought to recover the money so loaned.

Appeal from the Municipal Court of Chicago; the HON. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed May 21, 1912. Rehearing denied June 4, 1912.

GREGORY, POPPENHUSEN & McNAB, for appellant; S. S. GREGORY and G. T. HELLMUTH, of counsel.

BULL & JOHNSON, for appellee; ARTHUR S. LYTTON; of counsel.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

In June, 1910, appellee, the American Credit Indemnity Company of New York, a corporation, brought a suit of the first class in the Municipal Court of Chicago against appellant, A. S. Yamer, in assumpsit to recover certain moneys loaned and advanced by appellee to appellant. The statement of claim was "for money loaned and advanced by plaintiff to defendant at the times and in the amounts hereinafter stated, to-wit:

Sept. 10, 1907 ............................$ 983.61
Sept. 10, 1907 ......................... 16.39

Oct. 8, 1907 ................................ 1,000.00
Interest agreed by both parties as due to Dec.
    31, 1907 ................................ 25.00

                           $2,025.00

together with interest thereon at the rate of 6% per annum from February 10, 1908," accompanied by an affidavit. The court below entered judgment for $2,226, which is conceded to be the amount received by Yamer from appellee, with interest.

Yamer filed his written objections to proceeding in the cause, "except by the same forms of pleadings, as near as may be, in use in similar cases in the Circuit Court," and moved to strike the plaintiff's statement of claim from the files. The objection and motion were both overruled. At the time the appellee filed its verified statement of claim, it filed also a declaration in assumpsit, consisting of the common counts, duly verified. Upon motion of appellant, Yamer, that appellee be compelled to elect upon which it would proceed, the Municipal Court held that the declaration was improperly filed and ordered it stricken from the files; whereupon appellant, Yamer, filed an affidavit of merits, and afterwards an amended one. Upon motion of appellee, the two affidavits of merits were stricken from the files, and he was given leave to file another *instanter,* but he elected to stand upon his affidavits theretofore filed, whereupon the court entered judgment against him.

Appellant seeks a reversal of the judgment upon the following grounds: (1) that the Municipal Court erred in proceeding in the cause, except by the same form of pleadings, as near as may be, in use in similar cases in the Circuit Court; (2) the court erred in striking the affidavits of defense from the files; and, (3) that the court erred in rendering judgment against him.

In our consideration of the case, we are assuming,

because it is conceded, that Rule 14 of the Municipal Court provides that pleadings in cases of the first class shall be the same as in cases of the fourth class, and also that Rule 15 of that court provides that, in lieu of the declaration, plaintiff shall file a statement of claim. Appellant contends that the court below committed error in proceeding under these rules, because he claims that Section 3 of the Municipal Court Act governs the proceedings in first class cases and that section expressly provides that in all cases of the first and second classes, the issues shall be made up "by the same forms of pleadings, as near as may be, in use in similar cases in the Circuit Courts."

Rules 14 and 15, above referred to, are evidently based upon Section 20 and 28 of the Municipal Court Act. Section 20 provides that, "the judges of the Municipal Court shall have power to adopt, in addition to, or in lieu of, the provisions herein continued, prescribing the practice in said Municipal Court, or of any portion or portions of said provisions, such rules regulating the practice in said courts as they may deem necessary or expedient for the proper administration of justice therein: Provided, however, that no such rule or rules so adopted shall be inconsistent with those expressly provided for by this Act."

Paragraph 9 of Section 28 provides: "The judges of said Municipal Court may, by rules adopted in the manner prescribed by this act, provide that the practice in cases of the first class shall be the same as in this act provided for cases of the fourth class."

This provision was inserted in the Municipal Court Act by amendment of 1907, and Section 3 of the original Act must be considered as modified thereby.

Appellant insists, however, that these provisions of Sections 20 and 28, relate only to changes in "Practice," and that Rules 14 and 15, adopted pursuant thereto, go beyond changing the "Practice," and change the "Pleadings."

Construing the Municipal Court Act in the light of its manifest purpose and scope, we regard the term "practice" therein used as a general term, and as including within it the "pleadings." Indeed, our Supreme Court has recently held that the meaning of the word "practice" in the Act is so broad that it includes rules of evidence. City of Chicago v. Williams, 254 Ill. 360.

We are of the opinion that under the authority of Sections 20 and 28 of the Municipal Court Act, *supra,* the judges of that court are authorized to change the pleading in first class cases, because, in terms, these sections expressly exempt cases of the fourth and fifth classes from requiring any form of "pleadings" other than statements of claim, and authorize the court to make the practice (which, we think, includes pleadings), in first class cases, conform to that already expressly prescribed for fourth and fifth class cases.

In defining the word "practice," our Supreme Court, in Fleishman v. Walker, 91 Ill. 318, said: "The mode and order of procedure in obtaining compensation for any injury by action or suit in the legally established courts from the inception of such suit until it ends in final determination of the court of last resort is all comprehended in the term 'practice.' " Substantially the same meaning is ascribed to the word "practice" by Bouvier, and in Rapalje's and Lawrence's law dictionary.

The second ground upon which appellant seeks a reversal is the alleged error of the court in striking from the files defendant's affidavits of defense. Appellee's claim was for money loaned and advanced by plaintiff to defendant, and it is necessary to examine the affidavits submitted on behalf of appellant, to determine whether they present a defense to this claim. These affidavits allege that in September, 1907, one Phelan, being then president of appellee company, desired to obtain a loan of about $1,000; that his ac-

Am. Credit Indemnity Co. v. Yamer, 170 Ill. App. 350.

count with the company was already overdrawn over $30,000, and that he could not borrow any more from it; that affiant was then an agent for the company, and was not indebted to it; that Phelan requested affiant to procure from the company the sum of $1,000 as an advance on commissions to be earned by affiant, which should be charged to him on the books of the company but which should really be for a loan to Phelan, and which Phelan agreed to pay; that this arrangement was made for the purpose of deceiving the public and representatives of the insurance departments of the various states in which the company was doing business; that as affiant had been an agent for the company for more than sixteen years, and had known Phelan well during that period, he consented to and did, on September 10, 1907, obtain from the appellee company $1,000 under the circumstances detailed, of which amount he turned over to Phelan $983.61, and retained but $16.39 for his own use; that, about October 8, 1907, there was a similar transaction by which affiant obtained an additional $1,000 from the appellee company, of which he sent to Phelan his check for $983.61; that the facts in relation to the transactions were known to the treasurer and to the vice president and secretary of the company, and to the others connected with the company, and assented to and approved by and participated in by them; that about December 30, 1907, at the request of one Treat, then vice president and secretary of the company, affiant gave his check for $2,025 to the treasurer of the company, so that affiant's account on the books of the company could be balanced before returns were made to the insurance department of the state of New York; that upon the margin of the check there was written, "Hold until February 10, 1908;" that it was then agreed that this check should never be collected, but should ultimately be cancelled and returned to the affiant; that the books of the company were balanced, showing this

debit of $2,025; that, though, affiant remained with the company until January 14, 1910, he was not called upon to pay a dollar on account of its claim until about May 20, 1909, at which time it was understood that Phelan was to leave the company, which he did in August, 1909, though the matter of payment was not pressed upon the affiant until March, 1910; that affiant believes that if the company had insisted, before it was determined that Phelan was to retire, that affiant should pay this indebtedness, he could have induced Phelan to pay it and protect affiant; that while in the employ of the company, and after having given the check in question, the company paid him over $11,000 for commissions earned by him; that he frequently asked for the return of his check, but the company still retained it, and claims to be entitled to payment thereof; that the fact that Phelan did thus overdraw his account and secure advances from agents for his own benefit was referred to in a report of an examination of the company made public in 1909.

The other affidavit of merits was to the effect that the plaintiff company is a corporation organized under the laws of the state of New York for the sole purpose of furnishing credit insurance and with only the powers and rights contemplated by the laws of New York to be exercised by companies organized for such a purpose.

Upon these affidavits appellant contends, (1) that the contracts were void because contrary to public policy; (2) that the loans were *ultra vires,* and (3) that appellee's delay in presenting the check put it out of defendant's power to recoup the money from Phelan, and it could not recover in this action because of its laches.

We do not think any of these contentions can be sustained. It is not only not denied, but it affirmatively appears from the affidavits in question that appellant did obtain from the appellee company the

money in question, and that demand had been made upon him for repayment and such repayment refused. The money which he thus procured, and which at the time of the suit, he still held or had disposed of, as he saw fit, was in equity and good conscience the property of the company, and we have no doubt that the company was entitled to recover it upon the theory of an implied promise to repay.

We do not see that appellee company violated any public policy in advancing to Yamer, its agent, this money. From the affidavits it appears that Yamer took the risk which was involved in procuring advances from the company to himself, with the arrangement between him and Phelan, by which Phelan was to receive from affiant the larger part of the loan and should repay it, so that affiant should not be called upon to pay; and the allegation in the affidavit that this arrangement was made between Phelan and affiant for the purpose of deceiving the public and the representatives of the insurance departments, cannot affect the liability of Yamer to repay the money which was advanced to him by the company. Nor would it make any difference even if the fradulent arrangement incidentally operated to deceive the insurance commissioners and the public authorities. Appellant cannot, on that account, retain money which he concedes was advanced to him by the company. The case of Lime Rock Bank v. Hewett, 50 Me. 267, cited by appellant in support of his contention, is not an authority upon the points involved. In that case the bank sued the maker of a note, which was given without consideration and with the express understanding by the officers of the bank that it should be used only for the purpose of deceiving the bank examiners. The distinction between that case and the one at bar is very apparent.

Upon the contention that the transaction is *ultra vires,* it is our view that appellant cannot avail him-

self of that defense. "A corporation cannot avail itself of the defense of *ultra vires,* when the contract has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance of the contract. * * * The same rule holds *eo converso.* If the other party has had the benefit of the contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation." Darst v. Gale, 83 Ill. 136; Whitney Arms Co. v. Barlow, 63 N. Y. 62; Kadish v. Garden City Equitable Loan and Building Association, 151 Ill. 531; 29 Am. & Eng. Ency. of Law, 50 and 51. In Leslie v. Lorillard, 110 N. Y. 519, it is said that, "the rule, however, is well settled that the plea of *ultra vires* should not prevail when it would not advance justice, but, on the contrary, would accomplish legal wrong." And as was said in Brown v. Mortgage Company, 110 Ill. 235, "to allow the plea of *ultra vires* here would be to work a wrong,—it would be contrary to natural right and justice, which is never admissible." (Citing Darst v. Gale, 83 Ill. 136.)

Where a contract has been fully executed on one side and nothing remains to be done under it but the payment of money by the other, which is nothing more than the law implies against the defendant, the plaintiff may declare suit on the original contract, or, generally, in *indebitatus assumpsit,* at his election. Lane v. Adams, 19 Ill. 167; Foster v. McKeown, 192 Ill. 339; Sands v. Potter, 165 Ill. 397; Shepard v. Mills, 173 Ill. 223.

Finally, appellant urges that by its delay in presenting the check in question, appellee company put it out of Yamer's power to recoup the money from Phelan; therefore, the laches of the company will prevent a recovery. This contention cannot be sustained. It clearly appears from Yamer's affidavits that the check was not given in payment of the indebtedness.

This precludes him from relying upon such authorities as indicate that when a note, bill of exchange, or check has been given in payment of a debt, it must be returned or tendered before a recovery can be had upon the original indebtedness. Appellant was bound to know that he was liable to the company to repay the money which it advanced to him, and if he expected to rely upon Phelan's promise to protect him against this liability, he should have required Phelan to secure him.

In our opinion, the affidavits do not present a defense, and the judgment of the court below was proper, and should be affirmed.

*Judgment affirmed.*